1   GIBSON, DUNN & CRUTCHER LLP
    JOSHUA S. LIPSHUTZ, SBN 242557
2      jlipshutz@gibsondunn.com
    555 Mission Street, Suite 3000
3   San Francisco, CA 94105-0921
    Telephone:    415.393.8200
4   Facsimile:    415.393.8306

5   THEANE EVANGELIS, SBN 243570
       tevangelis@gibsondunn.com
6   MICHAEL HOLECEK, SBN 281034
       mholecek@gibsondunn.com
7   333 South Grand Avenue
    Los Angeles, CA 90071-3197
8   Telephone:    213.229.7000
    Facsimile:    213.229.7520
9
    Attorneys for Defendant DOORDASH, INC.
10

11

12                    **UNITED STATES DISTRICT COURT**

13                  **NORTHERN DISTRICT OF CALIFORNIA**

14                          **OAKLAND DIVISION**

15

16
    JENNIFER PETER and KARSON THEISS,        CASE NO. 4:19-cv-06098-JST
17  individually and on behalf of all others
    similarly situated,                       **DECLARATION OF JOSHUA LIPSHUTZ IN**
18                                            **SUPPORT OF DEFENDANT'S MOTION TO**
                         Plaintiffs,          **COMPEL ARBITRATION AND STAY**
19
             v.                               Action Filed:  September 25, 2019
20
    DOORDASH, INC., a Delaware corporation,
21                                            Hearing Date: January 29, 2020
                         Defendant.           Hearing Time: 2:00 p.m.
22                                            Hearing Place: Courtroom 6 – 2nd Floor
                                              Honorable Judge Jon S. Tigar
23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

I, Joshua Lipshutz, declare as follows:

1.     I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendant DoorDash, Inc. ("DoorDash" or "Defendant") in the above-captioned action.  I offer this declaration in support of DoorDash's Motion to Compel Arbitration and Stay.  I have personal knowledge of the facts set forth in this declaration (unless otherwise noted), and, if called to testify, I could and would competently testify to them.

2.     Attached hereto as **Exhibit A** is a true and correct copy of the Orange County Superior Court's March 7, 2019 order in *Farran v. DoorDash, Inc.*, No. 30-2018-00992677-CU-OE-CXC.

3.     Attached hereto as **Exhibit B** is a true and correct copy of the JAMS Streamlined Arbitration Rules.

4.     Attached hereto as **Exhibit C** is a true and correct copy of the San Francisco Superior Court's December 7, 2018 order in *Marciano v. DoorDash, Inc.*, No. CGC-18-567869.

5.     Attached hereto as **Exhibit D** is a true and correct copy of the Los Angeles Superior Court's May 29, 2018 order in *Marko v. DoorDash, Inc.*, No. BC659841.

6.     Attached hereto as **Exhibit E** is a true and correct copy of the Santa Clara Superior Court's March 21, 2016 order in *DoorDash, Inc. v. Marciano*, No. 2015-1-CV-287843.

7.     Attached hereto as **Exhibit F** is a true and correct copy of the United States District Court for the Central District of California's Order Granting the Joint Stipulation Ordering Plaintiff's Claims Into Arbitration and Staying PAGA Claims in *Lyons v. DoorDash, Inc.*, No. 2:17-cv-01496 (C.D. Cal. May 19, 2017).

8.     Attached hereto as **Exhibit G** is a true and correct copy of the Los Angeles Superior Court's September 24, 2019 order in *Farran v. DoorDash, Inc.*, No. 19STCV13945.

9.     Attached hereto as **Exhibit H** is a true and correct copy of the Los Angeles Superior Court's April 18, 2019 order in *Lowe v. DoorDash, Inc.*, No. BC715425.

//

//

//

//

1         I declare under penalty of perjury pursuant to the laws of the United States of America and the

2    State of California that the foregoing is true and correct.

3         Executed at Washington, D.C., on this 15th day of November, 2019.

4

5                                     */s/*      *Joshua Lipshutz*

6                                          Joshua Lipshutz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

DECLARATION OF JOSHUA LIPSHUTZ ISO DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY
CASE NO. 3:19-cv-06098-JST

EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 03/07/2019                    TIME: 02:00:00 PM          DEPT:  CX102

JUDICIAL OFFICER PRESIDING: Peter Wilson
CLERK:  Virginia Harting
REPORTER/ERM: Carolyn Marie Gregor-2351 CSR# 2351
BAILIFF/COURT ATTENDANT:  Nestor Peraza

CASE NO: **30-2018-00992677-CU-OE-CXC** CASE INIT.DATE: 05/11/2018
CASE TITLE: **Suhail Farran vs. Doordash Inc.**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Other employment

---

EVENT ID/DOCUMENT ID: 72975996

**EVENT TYPE**: Petition to Compel Arbitration
MOVING PARTY: Doordash Inc.
CAUSAL DOCUMENT/DATE FILED: Motion to Compel Arbitration, 07/02/2018

---

**APPEARANCES**
Daniel Hyun, from Aegis Law Firm, PC, present for Plaintiff(s).
Joshua Lipshutz and Michael J. Holecek, from Gibson, Dunn & Crutcher LLP, present for Defendant(s).

---

Tentative Ruling posted on the Internet.

The Court hears oral argument and confirms the tentative ruling as follows:

The motion of Defendant Doordash, Inc. to Compel Arbitration and Stay the Proceedings is GRANTED.

The parties' arbitration agreement is governed by the FAA as it involves interstate commerce. (See *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277.) "The United States Supreme Court has broadly interpreted the phrase 'involving commerce' … as the functional equivalent of 'affecting' commerce. [Citations.] The [FAA's] reach is expansive and coincides with that of the commerce clause." (*Scott v. Yoho* (2016) 248 Cal.App.4th 392, 400.) "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.' [Citations.] Only that general practice need bear on interstate commerce in a substantial way." (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56–57.)

Here, the evidence shows that Defendant operates in 40 states and Canada. Its mobile application is internet based and its transactions involve technological infrastructure located in various states. Defendant advertises to customers on the internet. It also communicates with customers, "Dashers," restaurants, and other businesses in other states by telephone, mail, and email. (Aughney Decl., ¶¶ 4-6.) Defendant has sufficient nexus with interstate commerce to require the Agreement to be enforced under the FAA. (See e.g., *Scott v. Yoho* (2016) 248 Cal.App.4th 392, 401-02.)

The FAA's transportation-worker exemption contained in 9 U.S.C. § 1 does not apply to Plaintiff. The

---

CASE TITLE: Suhail Farran vs. Doordash Inc.                    CASE NO: **30-2018-00992677-CU-OE-CXC**

inquiry whether an arbitration agreement involves interstate commerce is separate from the inquiry as to whether the Section 1 exemption applies. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 105-106, 114-19.) The meaning of "in commerce" as used in Section 1 is narrower than Section 2. (*Ibid.*)

"[S]ection 1 of the FAA exempts only the employment contracts of workers actually engaged in the movement of goods in interstate commerce." (*Cole v. Burns Intern. Sec. Services* (D.C. Cir. 1997) 105 F.3d 1465, 1471; see e.g. *Levin v. Caviar, Inc.* (N.D. Cal. 2015) 146 F.Supp.3d 1146, 1152-55 [denying Section 1 exemption where food delivery driver did not make deliveries across state lines].) Section 1 applies to "workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." (*Tenney Eng'g v. United Elec., Radio & Mach. Workers* (3d Cir. 1953) 207 F.2d 450, 452.) While *New Prime Inc. v. Oliveira* (2019) 139 S.Ct. 532 clarified that the Section 1 exemption can apply to independent contractors, it did not otherwise alter the definition of transportation workers.

Plaintiff has not provided any evidence that his work had any effect on the movement of goods in interstate commerce. To the contrary, he states he was a "local delivery driver" that "used his personal vehicle to deliver food from local California restaurants to local California citizens" and "did not engage in any activity involving interstate commerce." (Plaintiff's Supp. Opp., p. 4:15-19.) Thus, the Section 1 exemption does not apply to him.

As to the arbitrability of his claims, Plaintiff does not contest that his first through seventh causes of action are arbitrable. Nor does he challenge the class action waivers relating to these claims. The Court notes that these waivers are permitted under the FAA. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 333-34; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 359.) Thus, these claims are arbitrable.

As to the eighth cause of action, Plaintiff's argument that his waiver of the UCL claim is unenforceable is for the Court to determine. (Tang Decl., Ex. A, § XI, ¶ 3 ["[A]ny claim that all or part of this Class Action waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."].) "Agreements to arbitrate claims for public injunctive relief under the … the UCL … are not enforceable in California." (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 956.) However, Plaintiff's cause of action does not seek public injunctive relief. The UCL claim seeks redress for wage and hours violations. This is a private dispute between Plaintiff and Defendant that provides, at best, an incidental benefit to the public. (See *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955-56.) Thus, Plaintiff's UCL claim is arbitrable.

Defendant has requested a stay pending determination of this petition and a stay pending completion of the arbitration. Thus, this action has been stayed since July 2018, when Defendant filed this petition. (Code. Civ. Proc., § 1284.4; *Twentieth Century Fox Film Corp. v. Superior Court* (2000) 79 Cal.App.4th 188, 192.) The Court's authority during the stay is limited. (See *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487.)

Further, the Court finds lifting the stay to allow Plaintiff leave to amend to add a PAGA claim would cause prejudice to Defendant. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.) Defendant would lose the benefit of the parties' agreement to arbitrate disputes, such as whether Plaintiff is an independent contractor. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [stating the "liberal federal policy favoring arbitration" and that arbitration agreement must be enforced "according to their terms"].)

CASE TITLE: Suhail Farran vs. Doordash Inc.          CASE NO: **30-2018-00992677-CU-OE-CXC**

---

Further, allowing Plaintiff leave to amend would have little practical benefit for Plaintiff. As Defendant notes in its reply, at least five PAGA actions predate Plaintiff's proposed PAGA claim. (Lipshutz Decl., Exs. C-G.) Thus, even if Plaintiff added a PAGA claim it would be stayed pending the outcome of the other actions. (See *Alakozai v. Chase Inv. Services Corp.* (C.D. Cal., Mar. 1, 2012) 2012 WL 748584, at *5, aff'd (9th Cir. 2014) 557 Fed.Appx. 658.)

Thus, the Court orders Plaintiff's claims against Defendants to arbitration and continues the stay of this action pending arbitration.

Plaintiff's requests for judicial notice are denied as irrelevant. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748 fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

The Court sets an Arbitration Review Hearing for September 6, 2019 at 9:00 AM.

Moving party to give notice.

---

# EXHIBIT B

# JAMS Streamlined Arbitration Rules & Procedures

*Effective July 1, 2014*



# JAMS STREAMLINED ARBITRATION RULES & PROCEDURES

JAMS provides arbitration and mediation services worldwide. We resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

JAMS arbitrators and mediators are full-time neutrals who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct.

Parties wishing to write a pre-dispute JAMS arbitration clause into their agreement should review the sample arbitration clauses on pages 3 and 4. These clauses may be modified to tailor the arbitration process to meet the parties' individual needs.



# TABLE OF CONTENTS

Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . .3

## Standard Arbitration Clauses Referring to the JAMS Streamlined Arbitration Rules

Standard Commercial Arbitration Clause  . . . . . . . . . .3

Standard Commercial Arbitration Clause Naming
JAMS or Another Provider . . . . . . . . . . . . . . . . . . . . .4

## JAMS Streamlined Arbitration Rules & Procedures

Rule 1.   Scope of Rules  . . . . . . . . . . . . . . . . . . . . .5

Rule 2.   Party Self-Determination . . . . . . . . . . . . . .6

Rule 3.   Amendment of Rules  . . . . . . . . . . . . . . . . .6

Rule 4.   Conflict with Law . . . . . . . . . . . . . . . . . . . .6

Rule 5.   Commencing an Arbitration and Service . . . .6

Rule 6.   Preliminary and Administrative Matters. . . . .9

Rule 7.   Notice of Claims. . . . . . . . . . . . . . . . . . . .10

Rule 8.   Interpretation of Rules and
           Jurisdiction Challenges . . . . . . . . . . . . . . .11

Rule 9.   Representation. . . . . . . . . . . . . . . . . . . . .12

Rule 10. Withdrawal from Arbitration. . . . . . . . . . . .12

Rule 11. Ex Parte Communications . . . . . . . . . . . . .12

Rule 12. Arbitrator Selection, Disclosures
           and Replacement . . . . . . . . . . . . . . . . . . .12

Rule 13. Exchange of Information . . . . . . . . . . . . . .14

Rule 14. Scheduling and Location of Hearing. . . . . .15

Rule 15. Pre-Hearing Submissions  . . . . . . . . . . . . .15

Rule 16. Securing Witnesses and Documents
           for the Arbitration Hearing. . . . . . . . . . . . .16

Rule 17. The Arbitration Hearing. . . . . . . . . . . . . . .16

Rule 18. Waiver of Hearing. . . . . . . . . . . . . . . . . . .18

Rule 19. Awards  . . . . . . . . . . . . . . . . . . . . . . . . . .18

Rule 20. Enforcement of the Award . . . . . . . . . . . . .20

Rule 21. Confidentiality and Privacy  . . . . . . . . . . . .20

Rule 22. Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . .21

Rule 23. Settlement and Consent Award  . . . . . . . . .21

Rule 24. Sanctions  . . . . . . . . . . . . . . . . . . . . . . . .22

Rule 25. Disqualification of the Arbitrator
as a Witness or Party and
Exclusion of Liability . . . . . . . . . . . . . . .22

Rule 26. Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

Rule 27. Bracketed (or High-Low)
Arbitration Option. . . . . . . . . . . . . . . . . .23

Rule 28. Final Offer (or Baseball)
Arbitration Option. . . . . . . . . . . . . . . . . .24

## Administrative Fees

For two-party matters, JAMS charges a $1,500 Filing Fee, to be paid by the party initiating the Arbitration. JAMS also charges a $1,500 Filing Fee for counterclaims. For matters involving three or more parties, the Filing Fee is $2,000. A Case Management Fee of 12% will be assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation.

JAMS neutrals set their own hourly, partial and full-day rates. For information on individual neutrals' rates and the administrative fees, please contact JAMS at 800.352.5267. The fee structure is subject to change.

## Standard Arbitration Clauses Referring to the JAMS Streamlined Arbitration Rules

### Standard Commercial Arbitration Clause*

*Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in (insert the desired place of arbitration), before (one) (three) arbitrator(s). The arbitration shall be administered by JAMS pursuant to its*

*Streamlined Arbitration Rules & Procedures (Comprehensive Arbitration Rules & Procedures). Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.*

*(Optional) Allocation of Fees and Costs: The arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.*

Sometimes contracting parties may want their agreement to allow a choice of provider organizations (JAMS being one) that can be used if a dispute arises. The following clause permits a choice between JAMS or another provider organization at the option of the first party to file the arbitration.

## Standard Commercial Arbitration Clause Naming JAMS or Another Provider*

*Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration in (insert the desired place of arbitration), before (one) (three) arbitrator(s). At the option of the first party to file an arbitration, the arbitration shall be administered either by JAMS pursuant to its (Streamlined Arbitration Rules & Procedures) (Comprehensive Arbitration Rules & Procedures), or by (name an alternate provider) pursuant to its (identify the rules that will govern). Judgment on the Award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.*

*(Optional) Allocation of Fees and Costs: The arbitrator may, in the Award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.*

*The drafter should select the desired option from those provided in the parentheses.

All of the JAMS Rules, including the Streamlined Arbitration Rules set forth below, can be accessed at the JAMS website: **www.jamsadr.com/rules-clauses.**

# JAMS STREAMLINED ARBITRATION RULES & PROCEDURES

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## Rule 1. Scope of Rules

(a)  The JAMS Streamlined Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, no disputed claim or counterclaim exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.

(b)  The Parties shall be deemed to have made these Rules a part of their Arbitration agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Streamlined Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)  The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of the General Counsel or their designees.

(d)  JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)  The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-file) means the electronic transmission of documents to and from JAMS and other Parties for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents via JAMS Electronic Filing System to a Party, attorney or representative under these Rules.

## Rule 2.  Party Self-Determination

(a)  The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 12(j), 25 and 26). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)  When an Arbitration Agreement provides that the arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS rules, the Parties may subsequently agree to modify that agreement to provide that the arbitration will be administered by JAMS and/or conducted in accordance with JAMS rules.

## Rule 3.  Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## Rule 4.  Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## Rule 5.  Commencing an Arbitration and Service

(a) The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)   A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)   A pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)  A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules, confirmed in writing by the Parties; or

(iv)   The Respondent's failure to timely object to JAMS administration; or

(v)   A copy of a court order compelling Arbitration at JAMS.

(b)  The issuance of the Commencement Letter confirms that the requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties along with evidence that the Demand for Arbitration has been served on all Parties.

(c)  If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 14, the Arbitrator shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirements such as the statute of limitations, any contractual limitations period or claims notice requirements. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rule 3, 10(a) and 26(a)).

(e)  Service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document. In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period.

(f)  Electronic Filing. The Arbitrator may at any time require electronic filing and service of documents in an Arbitration. If an Arbitrator requires electronic filing, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of all documents filed through JAMS Electronic Filing System. Any document

filed electronically shall be considered as filed with JAMS when the transmission to JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date. Upon completion of filing, JAMS Electronic Filing System shall issue a confirmation receipt that includes the date and time of receipt. The confirmation receipt shall serve as proof of filing.

Every document electronically filed or served shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney. Typographical signatures shall be treated as personal signatures for all purposes under these Rules. Documents containing signatures of third parties (i.e., unopposed motions, affidavits, stipulations, etc.) may also be filed electronically by indicating that the original signatures are maintained by the filing Party in paper format.

Delivery of e-service documents through JAMS Electronic Filing System to other registered users shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service completes the transmission of the electronic document(s) to JAMS Electronic Filing System for e-filing and/or e-service. Upon actual or constructive receipt of the electronic document(s) by the Party to be served, a Certificate of Electronic Service shall be issued by JAMS Electronic Filing System to the Party initiating e-service, and that Certificate shall serve as proof of service. Any Party who ignores or attempts to refuse e-service shall be deemed to have received the electronic document(s) 72 hours following the transmission of the electronic document(s) to JAMS Electronic Filing System.

If an electronic filing or service does not occur because of (1) an error in the transmission of the document to JAMS Electronic Filing System or served Party that was unknown to the sending Party; (2) a failure to process the electronic document when received by JAMS Electronic Filing System; (3) the Party was erroneously excluded from the service list; or (4) other technical problems experienced by the filer, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed *nunc pro tunc* to the date it was first attempted to be sent electronically. Or, in the case of

service, the Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

## Rule 6.  Preliminary and Administrative Matters

(a)  JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered.

(c)  If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 19(e) and 26(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)  JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e)  Unless the Parties' Agreement or applicable law provides otherwise, JAMS may consolidate Arbitrations in the following instances:

(i)  If a Party files more than one Arbitration with JAMS, JAMS may consolidate the Arbitrations into a single Arbitration.

(ii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators already appointed.

(iii)   Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f) Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## Rule 7.  Notice of Claims

(a)  Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim, or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)  Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany

the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c)  Within seven (7) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have.

(d)  Within seven (7) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e)  Any claim or counterclaim to which no response has been served will be deemed denied.

(f)   Jurisdictional challenges under Rule 8 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## Rule 8.  Interpretation of Rules and Jurisdiction Challenges

(a)  Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)  Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)  The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rule 19.

## Rule 9. Representation

(a) The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to JAMS and the other Parties of the name, address, telephone and fax numbers and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b) Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone and fax numbers and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

## Rule 10.  Withdrawal from Arbitration

(a)  No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b) A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of service of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## Rule 11.  *Ex Parte* Communications

No Party will have any *ex parte* communication with the Arbitrator regarding any issue related to the Arbitration. The Arbitrator may authorize any Party to communicate directly with the Arbitrator by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

## Rule 12.  Arbitrator Selection, Disclosures and Replacement

(a)  JAMS Streamlined Arbitrations will be conducted by one neutral Arbitrator.

(b)  Unless the Arbitrator has been previously selected by agreement of the Parties, the Case Manager may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(c)  If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least three (3) Arbitrator candidates. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (d) below.

(d)  Within seven (7) calendar days of service by the Parties of the list of names, each Party may strike one (1) name and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(e)  If this process does not yield an Arbitrator, JAMS shall designate the Arbitrator.

(f)  If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(g)  Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities are adverse for purposes of Arbitrator selection, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

(h)  If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(i)  Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar

days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties or their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(j)  At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

## Rule 13.  Exchange of Information

(a)  The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and information (including electronically stored information ("ESI")) relevant to the dispute or claim, including copies of all documents in their possession or control on which they rely in support of their positions or that they intend to introduce as exhibits at the Arbitration Hearing, the names of all individuals with knowledge about the dispute or claim and the names of all experts who may be called upon to testify or whose reports may be introduced at the Arbitration Hearing. The Parties and the Arbitrator will make every effort to conclude the document and information exchange process within fourteen (14) calendar days after all pleadings or notices of claims have been received. The necessity of additional information exchange shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness.

(b)  As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-

privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(c) The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute.

## Rule 14. Scheduling and Location of Hearing

(a) The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b) If a Party has failed to participate in the Arbitration process, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c) The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## Rule 15. Pre-Hearing Submissions

(a) Except as set forth in any scheduling order that may be adopted, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall

attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b) The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## Rule 16.   Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 14(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## Rule 17.   The Arbitration Hearing

(a) The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so.

(b) The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c) The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d) Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable

law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e) The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g) The Hearing, or any portion thereof, may be conducted telephonically or videographically with the agreement of the Parties or at the discretion of the Arbitrator.

(h) When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator, to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter. If post-Hearing briefs are to be submitted, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs.

(i)   At any time before the Award is rendered, the Arbitrator may, *sua sponte* or upon the application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)  The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 14, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)  Any Party may arrange for a stenographic or other record to be made of the Hearing and shall inform the other Parties in advance of the Hearing.

(i)    The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)   If there is no agreement to share the cost of the stenographic record, it may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)  The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## Rule 18.   Waiver of Hearing

The Parties may agree to waive oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## Rule 19.   Awards

(a)  The Arbitrator shall render a Final Award or Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing as defined in Rule 17(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 17(i). The Arbitrator shall provide the Final Award or Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)  In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(c)  In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(d)  Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(e)  The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 26(c).)

(f)   The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(g)  The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.

(h)  After the Award has been rendered, and provided the Parties have complied with Rule 26, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(i)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and on JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 26(c) or on account of the effect of an offer to allow judgment), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within fourteen (14) calendar days of receiving a request or seven (7) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(j)   The Award is considered final, for purposes of judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 20, fourteen (14) calendar days after service is deemed effective if no request for a correction is made, or as of the effective date of service of a corrected Award.

## Rule 20.   Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et. seq.*, or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## Rule 21.   Confidentiality and Privacy

(a)  JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b) The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)  Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## Rule 22.   Waiver

(a)  If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)  If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## Rule 23.   Settlement and Consent Award

(a)  The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator, unless the Parties so agree, pursuant to Rule 23(b).

(b)  The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c)  If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## Rule 24.    Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## Rule 25.    Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)  The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)  The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)  The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## Rule 26.    Fees

(a)  Each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may

result in an administrative suspension of the case in accordance with Rule 6(c).

(b) JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its *pro rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)  The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may Award against any Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)  Entities whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities are adverse for purpose of fees, considering such factors as whether the entities are represented by the same attorney and whether the entities are presenting joint or separate positions at the Arbitration.

## Rule 27.   Bracketed (or High-Low) Arbitration Option

(a)  At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)  JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)  The Arbitrator shall render the Award in accordance with Rule 19.

(d)  In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the

Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## Rule 28.  Final Offer (or Baseball) Arbitration Option

(a)  Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 19(b). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)  If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 19(b). This provision modifies Rule 19(g) in that no written statement of reasons shall accompany the Award.

(c)  If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 19, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)  Other than as provided herein, the provisions of Rule 19 shall be applicable.

800.352.5267  |  www.jamsadr.com

EXHIBIT C



**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Dec-07-2018  2:38 pm

Case Number: CGC-18-567869

Filing Date: Dec-07-2018 2:37

Filed by:  WILLIAM TRUPEK

Image: 06602720

ORDER

CYNTHIA MARCIANO VS. DOORDASH INC.

001C06602720

**Instructions:**
Please place this sheet on top of the document to be scanned.

*Prepared by
the court.*

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

F I L E D

San Francisco County Superior Court

DEC   7 2018

CLERK OF THE COURT

BY: _____
'Deputy Clerk

CYNTHIA MARCIANO, et al.,

          Plaintiffs,

vs.

DOORDASH, INC.,

          Defendant.

Case No. CGC-18-567869

**ORDER GRANTING MOTION TO STAY
ACTION**

—————————————————————————

A welter of litigation has been filed to decide the same central issue: whether people who have worked with DoorDash, Inc. to deliver food from restaurants to consumers are independent contractors or employees. This particular action was filed under "the Labor Code Private Attorneys General Act of 2004" (Labor Code §2698 et seq.: PAGA).

DoorDash moves to stay these court proceedings and to compel arbitration. I GRANT the motion to stay for each of three reasons:

*First,* other plaintiffs (represented by the same counsel) are presently arbitrating the same independent contractor v. employee issue with DoorDash, with hearings set for early 2019. Thus, CCP §1281.4 provides that this action "shall be stayed" pending the arbitrations. (See also *Marcus v. Sup. Ct.* (1977) 75 Cal.App.3d 204, 209.)

*Second,* a PAGA action – *Marko v. DoorDash, Inc.* – that makes the same allegations seeking the same penalties for the same group of DoorDash delivery providers was first-filed in Los Angeles County Superior Court. Thus, this San Francisco PAGA action should be stayed in

1

favor of the Los Angeles PAGA action.  (See, e.g., *Alakozai v. Chase Inv. Servs. Corp.* (C.D.Cal. 3/1/12 2012 WL 748548 at 6 ("allowing the two matters to proceed simultaneously would risk inconsistent judgments and defeat efficiency").

     *Third,* as recognized by Code of Civil Procedure §128, courts have inherent powers to control the proceedings before them.  Thus, I could, and would, stay this action *sua sponte* on grounds of efficiency and consistency even if not required to do so by statute.

     Questions of arbitrability are DEFERRED until such time as they need to be decided, if ever.

Dated: December 7, 2018

                            _____
                            Richard B. Ulmer Jr.
                            Judge of the Superior Court

# SUPERIOR COURT OF CALIFORNIA
## County of San Francisco

CYNTHIA MARCIANO, et al,,

          Plaintiffs,

v.

DOORDASH, INC.,

          Defendants.

Case No.  CGC-18-567869

**CERTIFICATE OF MAILING**
(CCP 1013a (4) )

     I, William Trupek, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

     On December 7, 2018, I served the attached  ORDER  GRANTING MOTION TO STAY ACTION, by  placing a copy thereof in a sealed envelope, addressed as follows:

MICHAEL J. HOLECEK
GIBSON DUNN
333 SOUTH GRAND AVE.
LOS ANGELES, CA 90071

SHANNON LISS-RIORDAN
LICHTEN & LISS-RIORDAN, P.C.
729 BOYLSTON ST. STE 2000
BOSTON, MA 02116

JOSHUA LIPSHUTZ
GIBSON DUNN
1050 CONNECTICUT AVE. N.W.
WASHINGTON D.C. 20036

I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated: December 7, 2018

          T. MICHAEL YUEN, Clerk

          By:
          William Trupek,
          Deputy Clerk

# EXHIBIT D

| 1 | ANDREW M. SPURCHISE, Bar No. 245998 |
| | aspurchise@littler.com |
| 2 | LITTLER MENDELSON, P.C. |
| | 900 Third Avenue |
| 3 | New York, NY 10022.3298 |
| | Telephone: 212.583.9600 |
| 4 | Fax No.: 212.832.2719 |

**CONFORMED COPY**
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 29 2018

Sherri R. Carter, Executive Officer/Clerk

By: Benigno Del Barrio, Deputy

5 SOPHIA BEHNIA, Bar No. 289318
  sbehnia@littler.com
6 BLAIR A. COPPLE, Bar No. 313580
  bcopple@littler.com
7 LITTLER MENDELSON, P.C.
  333 Bush Street, 34th Floor
8 San Francisco, CA 94105
  Telephone: 415.433.1940
9 Fax No.: 415.399.8940

10 Attorneys for Defendant
   DOORDASH, INC.

11

12 SUPERIOR COURT OF THE STATE OF CALIFORNIA

13 COUNTY OF LOS ANGELES

| 14 | DANIEL MARKO, BROCK BAKER, and | Case No. BC659841 |
| | JESUS CORONA, individually and on | |
| 15 | behalf of all others similarly situated, | ASSIGNED FOR ALL PURPOSES TO HON. |
| | | WILLIAM HIGHBERGER – DEPT. 322 |
| 16 | Plaintiffs, | |
| | | [~~PROPOSED~~] ORDER GRANTING IN |
| 17 | v. | PART DEFENDANT DOORDASH, INC.'S |
| | | PETITION TO COMPEL ARBITRATION |
| 18 | DOORDASH, INC.; and DOES 1 to 50, | |
| | inclusive, | Date: March 21, 2018 |
| 19 | | Time: 9:30 a.m. |
| | Defendant. | Dept.: 322 (now Dept. 10) |
| 20 | | |
| 21 | | Complaint Filed: May 2, 2017 |
| | | FAC filed: August 15, 2017 |
| 22 | | |

23

24

25 **RECEIVED**
   LOS ANGELES SUPERIOR COURT

26

27 APR 23 2018

28 R. NAZARYAN

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

1.

[~~PROPOSED~~] ORDER GRANTING IN PART DEFENDANT'S PETITION TO COMPEL ARBITRATION

1    Defendant Doordash, Inc.'s Petition to Compel Arbitration ("Petition") was heard on March

2    21, 2018 at 9:30 a.m. in Department 322 of the Superior Court of California, County of Los Angeles.

3    All parties were represented by counsel of record. The Court, having considered the supporting and

4    opposing papers to Defendant's Petition, the papers and pleadings on file in this matter, and having

5    heard and considered the oral arguments of counsel, and good cause appearing therefrom, ORDERS

6    as follows:

7    Defendant's Petition to Compel Arbitration is GRANTED, in part.

8    As required by the Federal Arbitration Act ("FAA") and the California Code of Civil

9    Procedure sections 1281.2 and 1281.4, and in light of the arbitration agreement entered into between

10   Plaintiffs and Defendant, Plaintiffs shall arbitrate their independent contractor status and claims for

11   damages on an individual basis, rather than on a class basis, in accordance with the Independent

12   Contractor Agreement accepted by each of them. Defendant's request to enforce the class action

13   waiver as to Plaintiffs' claim for injunctive relief is DENIED without prejudice, and Plaintiffs' claim

14   for injunctive relief is STAYED pending arbitration. The Court will renew its consideration of the

15   parties' arguments as to whether Plaintiffs' claim for injunctive relief qualifies as public injunctive

16   relief pursuant to *McGill v. Citibank*, 2 Cal. 5th 945 (2017) once arbitration is complete. Plaintiffs'

17   claims for civil penalties under the Private Attorneys General Act are also hereby STAYED.

18   Further, the parties have met and conferred regarding the selection of neutral arbitrators and

19   agreed upon the following individuals: Hon. Louis M. Meisinger (Ret.), Hon. Layn R. Phillips

20   (Ret.), and Hon Margaret A. Nagle (Ret.). Each arbitrator shall be assigned to hear one Plaintiff's

21   claims.

22   A non-appearance case review is set for October 12, 2018 at 9:00 a.m. for a status report on

23   the three arbitrations, with a joint report due on October 9, 2018.

24   **IT IS SO ORDERED.**

25   Dated: _____**5/29**_____, 2018

26

27   **WILLIAM F. HIGHBERGER, JUDGE**

     _____
     HONORABLE WILLIAM HIGHBERGER
     Judge of the Superior Court

28

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

2.                                          Case No. BC659841

[PROPOSED] ORDER GRANTING IN PART DEFENDANT'S PETITION TO COMPEL ARBITRATION

# EXHIBIT E

1

2

3

4

5

6

7



8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### SUPERIOR COURT OF CALIFORNIA
### COUNTY OF SANTA CLARA

DOORDASH, INC.,

          Petitioner,

vs.

CYNTHIA MARCIANO, et al.,

          Respondents,

Case No.   2015-1-CV-287843

ORDER RE: PETITION TO COMPEL
ARBITRATION OF DLSE
COMPLAINT AND STAY DLSE
PROCEEDINGS

      The petition by DoorDash, Inc. to compel arbitration of respondent Cynthia Marciano's
DLSE complaint and stay the DLSE proceedings came on for hearing before the Honorable Beth
McGowen on February 4, 2016, at 9:00 a.m. in Department 7. The matter having been submitted,
the Court finds and orders as follows:

      Currently before the Court is the petition by DoorDash, Inc. ("DoorDash") to compel
arbitration of the California Department of Industrial Relations, Division of Labor Standards
Enforcement ("DLSE") complaint filed by respondent Cynthia Marciano ("Marciano") and stay
the DLSE proceedings.

1

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    After the filing of the petition, DoorDash, Marciano, and respondent Julie Su in her

2    capacity as California Labor Commissioner ("Labor Commissioner") agreed to take the DLSE

3    hearing off calendar and postpone the matter pending the Court's ruling on the petition.

4    Marciano and the Labor Commissioner filed papers in opposition to the petition on

5    January 22, 2016. DoorDash filed its reply on January 28, 2016.

6    DoorDash's petition was heard on February 4, 2016. After the parties' presentation of

7    oral argument, the Court took the matter under submission.

8    **Discussion**

9    DoorDash seeks to compel arbitration of the DLSE complaint, arguing that the Federal

10   Arbitration Act (9 U.S.C. § 1 et seq.) ("FAA") governs the agreement; the incorporation of the

11   American Arbitration Association ("AAA") commercial rules delegates issues, such as the

12   gateway issue of arbitrability and the issue of enforceability, to the arbitrator; even if such issues

13   were to be decided by the Court, Marciano agreed to arbitrate the claims raised in the DLSE

14   complaint and the arbitration agreement is valid; and the arbitration agreement is not

15   procedurally or substantively unconscionable.

16   Marciano opposes the petition, arguing that the incorporation of the AAA commercial

17   rules does not constitute a clear and unmistakable delegation of the issues of arbitrability and

18   enforceability to the arbitrator because the Independent Contract Agreement contains

19   inconsistent provisions; the arbitration provision is unenforceable because it contains a non-

20   severable Private Attorneys General Act of 2004 ("PAGA") waiver; and the arbitration provision

21   is procedurally and substantively unconscionable.

22   The Labor Commissioner also opposes the petition, arguing that the arbitration agreement

23   does not cover the claims alleged in the DLSE complaint; the delegation of issues to the

24   arbitrator is unconscionable because, if enforced, it deprives the Labor Commissioner of

25   jurisdiction without providing the right of intervention; and the arbitration provision is

26   procedurally and substantively unconscionable because it contains a Berman waiver and other

27   unconscionable terms.

28

1   **I.      Procedural Issue**

2           As an initial matter, DoorDash asserts that Marciano failed to timely serve it with her

3   opposition papers and, consequently, the Court should reject her opposition as untimely.

4   DoorDash does not appear to have suffered any prejudice as a result of the defective service as it

5   admits that it eventually received a copy of the opposition and filed a substantive reply

6   addressing the issues raised therein. Given the absence of prejudice and in the interest of

7   addressing the matter on its merits, the Court will overlook the defective service and consider

8   Marciano's opposition.

9   **II.     Legal Standard**

10          "Strong public policies favor enforcement of agreements to arbitrate disputes. Under the

11  California Arbitration Act (Code Civ. Proc., § 1280 et seq. (CAA)), '[o]n petition of a party to an

12  arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and

13  that a party to the agreement refuses to arbitrate such controversy, the court shall order the

14  petitioner and the respondent to arbitrate the controversy if it determines that an agreement to

15  arbitrate the controversy exists....' (Code Civ. Proc., § 1281.2.) Under that provision, the court

16  shall order arbitration of any dispute that it determines is within the parties' arbitration

17  agreement unless the right to compel arbitration has been waived or the agreement is otherwise

18  unenforceable. (Code Civ. Proc., § 1281.2.) Under both the CAA and the [FAA], arbitration

19  agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or

20  equity for the revocation of any contract.' [Citations.]" (*Garcia v. Super. Ct.* (2015) 236

21  Cal.App.4th 1138, 1144 ("*Garcia*").)

22          "With respect to agreements to which the FAA applies, the federal policy favoring

23  arbitration preempts any state-law impediments to the policy's fulfillment. If a state law

24  interferes with the FAA's purpose of enforcing arbitration agreements according to their terms,

25  the FAA preempts the state-law provision, no matter how laudable the state law's objectives.

26  [Citations.] Under the supremacy clause of the United States Constitution (art. VI, cl. 2), the

27  FAA requires any conflicting state law to give way. [Citations.]" (*Garcia, supra,* 236

28  Cal.App.4th at p. 1144.)

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    "Code of Civil Procedure sections 1281.2 and 1290.2 provide for summary proceedings

2    in the trial court to resolve petitions to compel arbitration, in which the trial court sits as a trier-

3    of-fact, weighing documentary evidence and any oral testimony that the court may hear in its

4    discretion. [Citations.] In such proceedings the petitioner bears the burden of proving the

5    existence of a valid arbitration agreement by a preponderance of the evidence, while a party

6    opposing the petition bears the burden of proving any fact necessary to its defense. [Citation.]"

7    (*Garcia, supra*, 236 Cal.App.4th at p. 1145.)

8    **III.    Applicable Law**

9            DoorDash argues that the FAA governs the interpretation and application of the

10   arbitration provision because the Independent Contractor Agreement involves commerce and the

11   use of its mobile application; its mobile platform is available across the country; and material

12   posted on the internet (and by extension a mobile application) crosses state lines. In opposition,

13   Marciano and the Labor Commissioner do not dispute that the FAA applies to the agreement at

14   issue. Accordingly, the Court finds that the FAA governs the interpretation and application of the

15   agreement.

16   **IV.    Delegation of Issues to the Arbitrator**

17           As a threshold matter, the Court must first determine whether, under the terms of the

18   parties' agreement, it or an arbitrator decides the gateway issues of whether there is an agreement

19   to arbitrate between Marciano and DoorDash and whether that agreement covers the dispute

20   raised in the DLSE complaint.

21           DoorDash argues that the arbitration provision delegates these gateway issues to the

22   arbitrator because it incorporates the AAA commercial rules and the majority of courts to

23   consider the issue have held that the incorporation of the AAA commercial rules is a clear and

24   unmistakable delegation. DoorDash also contends that when considering whether the parties

25   clearly and unmistakably delegated the issue of arbitrability to the arbitrator, the Court can only

26   look at the arbitration provision itself and its delegation clause. DoorDash asserts that the Court

27   may not consider other provisions and/or sections of the Independent Contractor Agreement.

28

1    In opposition, Marciano argues that the incorporation of the AAA commercial rules is not

2    a clear and unmistakable delegation of issues to the arbitrator because there is a conflicting

3    provision in the Independent Contractor Agreement, i.e., the severability provision, which

4    indicates that a court should determine whether the agreement is valid and enforceable.

5    Under the FAA, the enforceability of an arbitration agreement is ordinarily to be

6    determined by the court. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781

7    ("*Ajamian*").)

8    Nonetheless, the parties may agree in the arbitration provision that questions of

9    arbitrability and/or enforceability will be delegated to the arbitrator. (E.g., *AT & T Technologies*

10   *v. Communications Workers* (1986) 475 U.S. 643, 649.) To establish this exception, it must be

11   shown by "clear and unmistakable" evidence that the parties intended to delegate the issue to the

12   arbitrator. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 ("*First Options*");

13   *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 69, fn. 1 ("*Rent-A-Center*") ["

14   '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the

15   parties agreed to arbitrate is to be decided by the court, not the arbitrator' "].) The "clear and

16   unmistakable" test reflects a "heightened standard" of proof. (*Rent–A–Center, supra,* 561 U.S. at

17   p. 69, fn. 1.)  The default expectancy is that the court would decide the matter, because the

18   question of who would decide the unconscionability of an arbitration provision is not one that the

19   parties would likely focus upon in contracting. (*First Options, supra,* 514 U.S. at pp. 943–945.)

20   Thus, the United States Supreme Court has decreed, a contract's silence or ambiguity about the

21   arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard. (*Id.*

22   at pp. 943–945.)

23   The vast majority of courts to consider the issue have held that incorporation of the rules

24   of an arbitration service (such as the AAA commercial rules)—when there are no inconsistent

25   terms in the agreement—is sufficient to show that the parties clearly and unmistakably delegated

26   authority to the arbitrator. (*Oracle America, Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d

27   1069, 1074 ["[v]irtually every circuit to have considered the issue has determined that

28   incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that

ORDER RE:  PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1  the parties agreed to arbitrate arbitrability"]; see e.g., *Contec Corp. v. Remote Solution Co.* (2d

2  Cir.2005) 398 F.3d 205, 208 ["[W]hen ... parties explicitly incorporate rules that empower an

3  arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable

4  evidence of the parties' intent to delegate such issues to an arbitrator."]; *Terminix International

5  v. Palmer Ranch Ltd. Partnership* (11th Cir.2005) 432 F.3d 1327, 1332 [incorporation of AAA

6  rules for commercial arbitration showed that the parties had clearly and unmistakably agreed that

7  the arbitrator should decide whether the arbitration clause was valid]; *Awuah v. Coverall N.Am.,

8  Inc.* (1st Cir.2009) 554 F.3d 7, 10–12 [incorporation of AAA rules constitutes clear and

9  unmistakable evidence of parties' intent]; *Fallo v. High–Tech Inst.* (8th Cir.2009) 559 F.3d 874,

10  877–878 ("*Fallo*") [same]; *Clarium Capital Management LLC v. Choudhury* (N.D.Cal. Feb. 10,

11  2009) 2009 WL 331588 at *5–6 [incorporation of AAA rules in arbitration agreement is clear

12  and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the

13  arbitrator]; *Zenelaj v. Handybook, Inc.* (N.D. Cal. 2015) 82 F.Supp. 3d 968, 971-972

14  [incorporation of AAA rules into agreement effectively delegated jurisdictional questions,

15  including arbitrability and validity, to arbitrator]; *Rodriguez v. American Technologies, Inc.*

16  (2006) 136 Cal.App.4th 1110, 1123 [parties clearly and unmistakably agreed to have the

17  arbitrator determine the scope of the clause, where the contract mandated arbitration in

18  accordance with AAA construction arbitration rules]; *Dream Theater, Inc. v. Dream Theater*

19  (2004) 124 Cal.App.4th 547, 550 [parties' contract stated arbitration would be conducted in

20  accordance with AAA commercial arbitration rules, which provided that the arbitrator would

21  have the power to rule on his or her own jurisdiction].)

22  　　　However, in those cases, there were no conflicting provisions anywhere in the subject

23  agreements or the conflicting provisions were within the arbitration agreements themselves. The

24  only case cited by the parties that presents a situation where conflicting terms were outside the

25  arbitration provision is *Ajamian*.

26  　　　In *Ajamian*, the arbitration provision in the worker's employment agreement referred to

27  the AAA employment rules. (*Ajamian, supra,* 203 Cal.App.4th at p. 776.) The Court of Appeal

28  held that even if the reference to AAA rules evinced an intent to delegate the unconscionability

6

1   issue to the arbitrator, there were other provisions of the employment agreement, outside the

2   arbitration provision, that created an ambiguity rendering the totality of the evidence on the issue

3   neither clear nor unmistakable. (*Id.*, at pp. 791-792 ["where one contractual provision indicates

4   that the enforceability of an arbitration provision is to be decided by the arbitrator, but another

5   provision indicates that the court might also find provisions in the contract unenforceable, there

6   is no clear and unmistakable delegation of authority to the arbitrator"].) Thus, under *Ajamian*, if

7   there is any contractual provision in the Independent Contractor Agreement that indicates that a

8   court is to decide issues of arbitrability and/or enforceability, *even if the provision is outside the*

9   *arbitration agreement itself*, there is no clear and unmistakable delegation of authority to the

10  arbitrator.

11          DoorDash failed to address *Ajamian* in its papers and at oral argument. Furthermore, the

12  majority of the cases DoorDash relies upon do not support its argument that the Court may not

13  consider inconsistent provisions in the Independent Contractor Agreement that are outside of the

14  arbitration provision.

15          In *Hill v. Anheuser-Busch InBev Worldwide, Inc.* (C.D. Cal., Nov. 26, 2014,

16  CV146289PSGVBKX) 2014 WL 10100283 ("*Hill*"), the court found that the purportedly

17  contradictory provision was not actually inconsistent with the arbitration provision with respect

18  to the issue of arbitrability. (*Id.*, at *4.) Thus, the question of whether the court could consider

19  inconsistent provisions that were outside of the arbitration agreement was not before the court.

20          Next, the United States Supreme Court in *Rent-A-Center* observed that the respondent *did*

21  *not dispute* that the text of the agreement clearly and unmistakably gave the arbitrator exclusive

22  authority to decide whether the agreement to arbitrate was enforceable. (*Rent–A–Center, supra*,

23  561 U.S. at p. 69, fn. 1.) Thus, the sufficiency of the purported delegation language and whether

24  it was proper to consider inconsistent terms outside of the arbitration agreement was not before

25  the court. (*Ajamian, supra*, 203 Cal.App.4th at p. 784.) *Rent-A-Center* merely stands for the

26  proposition that "a party's challenge to another provision of the contract, or to the contract as a

27  whole, does not prevent a court from enforcing a specific agreement to arbitrate." (*Rent-A-*

28  *Center, supra*, 561 U.S. at p. 70.) Here, Marciano is challenging only the arbitration and its

7

1 | delegation clause, as opposed to some other provision, and *Rent-A-Center* does not state that in

2 | doing, so she cannot point out inconsistent terms in the larger Independent Contractor

3 | Agreement.

4 |      Additionally, *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 446 simply

5 | reiterates the principle set forth in *Rent-A-Center*.

6 |      Finally, the remaining case cited by DoorDash—*Fallo*—is actually consistent with

7 | *Ajamian* and supports the position that the Court may consider provisions and/or sections of the

8 | Independent Contractor Agreement that are outside of the arbitration provision itself. In *Fallo*,

9 | students sued their former school for breach of their enrollment agreements. (*Fallo, supra,* 559

10 | F.3d at p. 876.) The enrollment agreements contained an arbitration clause incorporating the

11 | AAA commercial rules and "a separate provision concerning governing law." (*Ibid.*) On appeal,

12 | the students argued that the governing law provision conflicted with the arbitration provision,

13 | thereby undermining the trial court's conclusion that the parties intended to authorize an

14 | arbitrator to determine the question of arbitrability. (*Id.*, at p. 879.) The Court of Appeal did not

15 | disregard the students' argument because the governing law provision was separate from and

16 | outside of the arbitration provision. Rather, the court considered whether the governing law

17 | provision was in fact inconsistent with the arbitration provision's delegation of authority to the

18 | arbitrator and concluded that it was not. (*Ibid.*) Accordingly, *Fallo* hurts rather than helps

19 | DoorDash.

20 |      For these reasons, the Court will follow *Ajamian* and determine whether there are any

21 | provisions in the Independent Contractor Agreement that are inconsistent with the delegation of

22 | authority to the arbitrator.

23 |      As Marciano persuasively argues, the severability provision in the Independent

24 | Contractor Agreement creates an ambiguity regarding whether the parties clearly and

25 | unmistakably intended to delegate the issues of arbitrability and enforceability to the arbitrator.

26 | The severability provision states that "[i]f *a court finds that any provision of this Agreement is*

27 | *invalid or unenforceable,* but that by limiting such provision it would become valid and

28 | enforceable, then such provision shall be deemed to be written, construed and enforced as so

8

1   limited." (Munday Dec., Ex. A, emphasis added.) Thus, the Independent Contractor Agreement

2   anticipates that a court will have authority to rule on the validity and enforceability of the parties'

3   covenants. (See *Ajamian, supra,* 203 Cal.App.4th at p. 792.)

4          Accordingly, DoorDash fails to establish that the parties intended to delegate to the

5   arbitrator the exclusive authority to determine the issues of arbitrability and enforceability.

6          Since there is no clear and unmistakable delegation of authority to the arbitrator, the

7   Court need not address the Labor Commissioner's argument that the delegation clause itself is

8   unconscionable.

9          The Court now turns to the issues of whether there is an agreement to arbitrate between

10  Marciano and DoorDash and whether that agreement covers the dispute raised in the DLSE

11  complaint.

12  **V.      Agreement to Arbitrate and Scope of the Agreement**

13         Marciano and the Labor Commissioner do not dispute that the Independent Contractor

14  Agreement contains an agreement to arbitrate and Marciano was a party to that agreement.

15         Instead, the Labor Commissioner alone argues that the arbitration provision does not

16  cover the Labor Code claims asserted in the DLSE complaint. (Opp'n., p. 3.) The Labor

17  Commissioner contends that this case is analogous to *Elijahjuan v. Super. Ct.* (2012) 210

18  Cal.App.4th 15, 21 ("*Elijahjuan*"), wherein the Court of Appeal held that truck drivers who were

19  allegedly misclassified as independent contractors could not be compelled to arbitrate their Labor

20  Code claims because the arbitration clause limited arbitrable claims to those concerning the

21  "application or interpretation" of the contract.

22         The Labor Commissioner's argument lacks merit. As DoorDash persuasively argues, the

23  arbitration provision at issue in this case is broader than the one in *Elijahjuan* and is not limited

24  to claims related to the application or interpretation of the agreement. Rather, the arbitration

25  provision provides that "Contractor and Company agree that final and binding arbitration will be

26  the exclusive means of resolving *any disputes between Contractor and Company*." (Munday

27  Dec., Ex. A, emphasis added.) This broad language unambiguously covers Marciano's Labor

28  Code claims.

9

1    Since DoorDash meets its burden to establish the existence of the arbitration agreement

2    and that the dispute is covered by the agreement, the burden shifts to Marciano and the Labor

3    Commissioner to prove, by a preponderance of evidence, a ground for denial of arbitration, such

4    as waiver or unconscionability. (See *Rosenthal v. Great Western Fin'l Securities Corp.* (1996) 14

5    Cal.4th 394, 413; see also *Cinel v. Barna* (2012) 206 Cal.App.4th 1383, 1389.)

6    **VI.   PAGA Waiver**

7        Marciano argues that the arbitration provision at issue includes a non-severable PAGA

8    waiver and, consequently, under *Iskanian v. CLS Transportation of Los Angeles* (2014) 59

9    Cal.4th 348 ("*Iskanian*"), *Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425

10   ("*Sakkab*"), *O'Connor v. Uber Techs., Inc.* (N.D. Cal. 2015) 311 F.R.D. 547, 557 ("*O'Connor*"),

11   *Securitas Sec. Servs. USA, Inc. v. Super. Ct. of San Diego Cty.* (2015) 234 Cal.App.4th 1109

12   ("*Securitas*"), *Mohamed v. Uber Techs., Inc.* (N.D. Cal. 2015) 2015 WL 3749716 ("*Mohamed*"),

13   and *Thomas v. Aetna Health of California, Inc.* (E.D. Cal. June 2, 2011) 2011 WL 2173715

14   ("*Thomas*"), the arbitration agreement as a whole is unenforceable on public policy grounds.[1]

15   Marciano contends that since the arbitration provision states that "Contractor and Company

16   agree to bring any disputes in arbitration on an individual basis only" and there is no such thing

17   as individual claims for PAGA penalties, the arbitration provision effectively bars PAGA claims.

18       Conversely, DoorDash argues that the arbitration provision does not include a waiver of

19   PAGA claims because it merely provides for the waiver of class and collective actions and a

20   PAGA claim is a representative action. DoorDash further argues that the arbitration provision

21   does not include a PAGA waiver because it only covers disputes between it and Marciano and a

22   PAGA claim is a dispute between the state and the alleged employer, rather than the worker and

23   the alleged employer.

24       In *Iskanian,* the California Supreme Court held that "an arbitration agreement requiring

25   an employee as a condition of employment to give up the right to bring representative PAGA

26   actions in any forum is contrary to public policy." (*Iskanian, supra,* 59 Cal.4th at p. 360.) The

27   _____

28   [1] PAGA authorizes an employee to bring an action for civil penalties on behalf of the state against his or her
     employer for Labor Code violations committed against the employee and fellow employees, with most of the
     proceeds of that litigation going to the state. (*Iskanian, supra,* 59 Cal.4th at p. 360.)

ORDER RE:  PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    court further concluded that the FAA does not preempt state law prohibiting waiver of PAGA

2    representative actions in an employment contract. (*Ibid.*; see also *Sakkab, supra,* 803 F.3d at p.

3    439 [concluding that the FAA does not preempt the *Iskanian* rule].)

4        Furthermore, when the provision of the subject contract waiving representative claims

5    under PAGA is not severable from contract's arbitration provision, the entire arbitration

6    provision was unenforceable. (*O'Connor, supra,* 311 F.R.D. at pp. 557-563; *Securitas, supra,*

7    234 Cal.App.4th at p. 1127.)

8        The Court finds that the arbitration provision in the Independent Contractor Agreement

9    does not include a PAGA waiver. The arbitration provision states: "Contractor and Company

10   agree that final and binding arbitration will be the exclusive means of resolving any disputes

11   *between Contractor and Company* … Contractor and Company agree to bring *any disputes in*

12   *arbitration* on an individual basis only and *not as a class or other collective action basis*

13   Accordingly, there will be no right or authority for any dispute to be brought, heard or arbitrated

14   *as a class or other collective action* [.]" (Munday Dec., Ex. A, emphasis added.)

15        It is readily apparent that the arbitration provision makes no reference whatsoever to

16   representative claims, such as PAGA actions. For this reason, this case is distinguishable from

17   the cases cited by Marciano. (See *O'Connor, supra,* 311 F.R.D. at p.  557 ["You and Uber agree

18   to resolve any disputes in arbitration on an individual basis only, and not on a class, collective, or

19   *private attorney general representative action basis.*"] [emphasis added]; *Securitas, supra,* 234

20   Cal.App.4th at p. 1114 ["[T]here will be no right or authority for any dispute to be brought,

21   heard or arbitrated as a class, collective or *representative action* ('Class Action Waiver')."]

22   [emphasis added]; *Mohamed, supra,* 109 F.Supp.3d at p. 1218 ["You and Uber agree to bring

23   any dispute in arbitration on an individual basis only, and not on a class, collective, or *private*

24   *attorney general representative action basis.*"] [emphasis added].)

25        Moreover, as DoorDash points out, the arbitration provision is expressly limited in scope

26   to agreements between it and Marciano. Since a PAGA claim belongs to the State of California,

27   and not to Marciano, the language in the provision stating that Maricano may only bring

28   individual claims simply does not prevent her from bringing a representative PAGA action in

11

1   court. (See *Cobarruviaz v. Maplebear, Inc.* (N.D. Cal., Nov. 3, 2015, 15-CV-00697-EMC) 2015

2   WL 6694112 *11.)

3       Accordingly, the Court finds that Maricano's PAGA waiver argument lacks merit.

4   **VII.   Unconscionability**

5       Maricano and the Labor Commissioner argue that the arbitration provision is

6   unconscionable for several reasons, both procedural and substantive.

7       **A.     Doctrine of Unconscionability**

8       In *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 ("*Sanchez*"), the

9   California Supreme Court clarified the rules applicable to the unconscionability defense in a

10  factually similar case involving an automobile sales contract. The court described the general

11  principles of the doctrine of unconscionability as follows:

12          One common formulation of unconscionability is that it refers to an absence of

13          meaningful choice on the part of one of the parties together with contract terms

14          which are unreasonably favorable to the other party. As that formulation

15          implicitly recognizes, the doctrine of unconscionability has both a procedural and

16          a substantive element, the former focusing on oppression or surprise due to

17          unequal bargaining power, the latter on overly harsh and one-sided results. The

18          prevailing view is that [procedural and substantive unconscionability] must both

19          be present in order for a court to exercise its discretion to refuse to enforce a

20          contract or clause under the doctrine of unconscionability. But they need not be

21          present in the same degree. Essentially a sliding scale is invoked which disregards

22          the regularity of the procedural process of the contract formation, that creates the

23          terms, in proportion to the greater harshness or unreasonableness of the

24          substantive terms themselves. In other words, the more substantively oppressive

25          the contract term, the less evidence of procedural unconscionability is requires to

26          come to the conclusion that the term is unenforceable and vice versa.

27      (*Sanchez, supra,* 61 Cal.4th at p. 910.)

28

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    The unconscionability defense is a matter of California contract law and is not preempted

2    by federal law unless it disfavors arbitration by imposing procedural requirements that interfere

3    with the fundamental attributes of arbitration. (*Sanchez, supra,* 61 Cal.4th at p. 913.)

4    **B.    Procedural Unconscionability**

5    "Procedural unconscionability concerns the manner in which the contract was negotiated

6    and the circumstances of the parties at that time. It focuses on factors of oppression and surprise.

7    The oppression component arises from an inequality of bargaining power of the parties to the

8    contract and an absence of real negotiation or a meaningful choice on the part of the weaker

9    party." (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329, internal

10   citations omitted.)

11   Marciano argues that the arbitration provision is procedurally unconscionable because

12   she was not given the opportunity to negotiate any of the terms of the contract (i.e., the

13   Independent Contractor Agreement was an adhesion contract); there is no opt-out clause

14   allowing her to exclude herself from the arbitration provision; and DoorDash did not provide her

15   with a copy of the applicable arbitral rules.

16   Conversely, DoorDash contends that Marciano cannot establish procedural

17   unconscionability because a contract of adhesion is not per se unconscionable, Marciano was

18   provided to a period of time to review the Independent Contractor Agreement and review it with

19   others, her subjective belief that it was non-negotiable is irrelevant, she does not provide

20   evidence showing that she lacked alternative means of making money, and attaching the AAA

21   rules was not required.

22   An adhesion contract is " 'a standardized contract, which, imposed and drafted by the

23   party of superior bargaining strength, relegates to the subscribing party only the opportunity to

24   adhere to the contract or reject it.' " (*Morris v. Redwood Empire Bancorp* (2005) 128

25   Cal.App.4th 1305, 1319 ("*Morris*").) "Although adhesion contracts often are procedurally

26   oppressive, this is not always the case. [Citation.] Oppression refers not only to an absence of

27   power to negotiate the terms of a contract, but also to the absence of reasonable market

28   alternatives." (*Id.*, at p. 1320.)

13

ORDER RE:  PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1        Here, while Marciano asserts in a conclusory manner that she "was not allowed to

2    negotiate the terms of the agreement, including the arbitration provision" (Marciano Dec., ¶ 4),

3    she does provide any facts demonstrating that she was actually precluded from negotiating the

4    terms of the agreement. Notably, Marciano does not declare that a DoorDash representative told

5    her that the terms were non-negotiable, she asked or otherwise sought to negotiate the terms of

6    the agreement and was told she could not, or that DoorDash through its statements and/or

7    conduct represented to her that the Independent Contractor Agreement was "take it or leave it."

8    Therefore, Maricano fails to establish that the Independent Contractor Agreement was adhesive

9    and she could not negotiate its terms or otherwise opt-out of the arbitration provision.

10        Moreover, recent legal authority holds the failure to attach a copy of AAA rules is not

11    procedurally unconscionable. (See *Lane v. Francis Capital Management LLC* (2014) 224

12    Cal.App.4th 676, 691–692.)

13        For these reasons, Maricano fails to demonstrate that the arbitration provision is

14    procedurally unconscionable. Since Maricano must establish both procedurally and substantive

15    unconscionability, she fails to show that the Independent Contractor Agreement is

16    unconscionable.

17    **VIII.   Conclusion**

18        In sum, the Court finds that Marciano fails to meet her burden and the DLSE complaint is

19    subject to arbitration.

20        Accordingly, DoorDash's petition to compel arbitration is GRANTED.

21

22

23

24    March 21, 2016

25    _____

26    Beth McGowen

27    Judge of the Superior Court

28

14

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

### SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
### 191 N. First Street
### San Jose, CA   95113-1090

TO:   Galen M Lichtenstein
      Littler Mendelson, APC
      333 BushStreet, 34th Floor
      San Francisco, CA   94104



(ENDORSED)
**FILED**

MAR 2 1 2016

DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____
   Gorette Ramos_____Deputy

RE:   Doordash, Inc.Vs C. Marciano, Et Al
Case Nbr:  1-15-CV-287843

## PROOF OF SERVICE

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE
PROCEEDINGS

was delivered to the parties listed below in the above entitled case as set
forth in the sworn declaration below.

**Parties/Attorneys of Record:**

CC: Jessica L. Fry , Division Of Labor Standards Enf.
       100 Paseo De San Antonio, Suite 120, San Jose, CA 95113

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with
Disabilities Act, please contact the Court Administrator's office at (408)882-2700, or use the Court's TDD line, (408)882-2690 or
the Voice/TDD California Relay Service, (800)735-2922.

DECLARATION OF SERVICE BY MAIL: I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each
person whose name is shown above, and by depositing the envelope with postage fully prepaid, in the United States Mail at
San Jose, CA on 03/21/16.  DAVID H. YAMASAKI, Chief Executive Officer/Clerk by Gorette Ramos, Deputy

# EXHIBIT F

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY LYONS,<br><br>    Plaintiff,<br><br>  v.<br><br>DOORDASH INC.,<br><br>    Defendant. | Case No.  2:17-cv-01496-BRO-SS<br><br>ASSIGNED FOR ALL PURPOSES TO JUDGE BEVERLY REID O'CONNELL<br><br>**ORDER GRANTING JOINT STIPULATION ORDERING PLAINTIFF'S CLAIMS INTO ARBITRATION AND STAYING PAGA CLAIMS**<br><br>Complaint Filed: February 23, 2017<br>Trial Date:    None Set |

PURSUANT TO THE PARTIES' STIPULATION, IT IS ORDERED:

(1) Plaintiff's non-PAGA claims (first through ninth and eleventh causes of action in his Complaint [Dkt.1]) shall be dismissed;

(2) Plaintiff's non-PAGA claims shall be resolved in arbitration on an individual basis only, and not on a class or collective action basis;

(3) Plaintiff's PAGA claim shall be stayed pending the outcome of the arbitration;

(4) Defendant shall pay for the arbitrator's fees and arbitral forum-costs pertaining to the aforementioned arbitration;

(5) Each party shall bear his or its respective attorneys' fees incurred in relation to the instant action and the aforementioned arbitration, except as otherwise provided in any award of attorneys' fees (whether sought by cross-claim or otherwise) made by a judge or arbitrator in the instant action or the aforementioned arbitration;

(6) Plaintiff may participate in the settlement in *Evan Kissner v. DoorDash, Inc.*, Superior Court of California, County of San Francisco, Case No. CGC-15-548102 and *Cynthia Marciano v. DoorDash, Inc.*, Superior Court of California, County of San Francisco, Case No. CGC-15-5481 until a decision is rendered by the arbitrator on the merits of Plaintiff's claims or unless and until he timely and validly opts-out of said settlement;

(7) To the extent Plaintiff does not prevail on his claims in the arbitration, Plaintiff will retain the total amount of any monies he may receive from Defendant as a result of the *Marciano* and *Kissner* settlement; and

(8) To the extent Plaintiff does prevail on his claims in the arbitration, the Parties will meet and confer regarding Plaintiff's damages and any potential offset from his damages based on any monies he may receive from Defendant as a result of the *Marciano* and *Kissner* settlement. Should the Parties not come to an agreement regarding damages, they shall submit the dispute to the arbitrator to resolve.

///

**IT IS HEREBY ORDERED** that this action is removed from the Court's active caseload until further application by the parties or Order of this Court.

In order to permit the Court to monitor this action, the Court orders Plaintiff(s) to file periodic status reports indicating what steps have been taken to complete arbitration. The first such report is to be filed on August 18, 2017, unless the stay is lifted sooner. Successive reports shall be filed every 90 days thereafter. Each report must indicate on the face page the date on which the next report is due.

All pending calendar dates are vacated by the Court.

This Court retains jurisdiction over this action and this Order shall not prejudice any party to this action.

IT IS SO ORDERED.

DATED: May 19, 2017

By: _____

Honorable Beverly R. O'Connell
United States District Court Judge

EXHIBIT G

Electronically FILED by Superior Court of California, County of Los Angeles on 09/26/2019 02:03 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Panganiban,Deputy Clerk

Case 4:19-cv-06098-JST   Document 17-3   Filed 11/15/19   Page 64 of 90

GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:   415.393.8200
Facsimile:   415.393.8306

THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
ANDREW WILHELM, SBN 302849
  awilhelm@gibsondunn.com
STEPHANIE BALITZER, SBN 316133
  sbalitzer@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant DOORDASH, INC.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| SUHAIL FARRAN, individually and on behalf of all others similarly situated, | CASE NO. 19STCV13945 |
| Plaintiff, | **NOTICE OF RULING** |
| v. | Department 58 |
| DOORDASH, INC.; and DOES 1–10, inclusive, | Honorable Judge John P. Doyle |
| Defendants. | Complaint Filed:  April 23, 2019 |
| | Trial Date:  September 14, 2020 |

Gibson, Dunn &
Crutcher LLP

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on September 24, 2019, the Court in the above-captioned action adopted its tentative ruling as its order on Defendant DoorDash, Inc.'s Petition to Compel Arbitration and Stay Proceedings.  The ruling denied Defendant's request to compel arbitration and stayed this action pending further proceedings in other actions.  The ruling is attached hereto as Exhibit A.

Dated:  September 26, 2019                    GIBSON, DUNN & CRUTCHER LLP


By:  ___/s/  *Joshua Lipshutz*_____
                    Joshua Lipshutz

Attorney for Defendant DOORDASH, INC.

2

EXHIBIT A

**DEPARTMENT 58 LAW AND MOTION RULINGS**

Effective 2-1-16, Judge Treu is assigned to Dept. 59, Family Law.

**Case Number:** 19STCV13945   **Hearing Date:** September 24, 2019   **Dept:** 58

JUDGE JOHN P. DOYLE
Department 58

| | |
|---|---|
| Hearing Date: | September 24, 2019 |
| Calendar No: | 21 |
| Case Name: | Suhail Farran v. DoorDash, Inc. |
| Case No.: | 19STCV13945 |
| Motion: | Motion to Compel Arbitration |
| Moving Party: | Defendant DoorDash, Inc. |
| Responding Party: | Plaintiff Suhail Farran |

**Tentative Ruling:**   **The Motion to Compel Arbitration is denied. The alternative requested relief to stay this action is granted.**

**BACKGROUND**

This is an action arising from Plaintiff Suhail Farran's ("Plaintiff") employment as a delivery driver with Defendant DoorDash, Inc. ("Defendant"), which is in the business of providing food delivery services. Plaintiff alleges that Defendant has engaged in a systematic pattern of wage and hour violations under the California Labor Code.

On April 23, 2019, Plaintiff filed the operative Complaint seeking to recover civil penalties under the Private Attorney General Act ("PAGA") on behalf of other aggrieved delivery drivers. Plaintiff alleges Defendant misclassified its delivery drivers as independent contractors, and by doing so Defendant violated numerous Labor Code sections. (Complaint ¶ 32.)

Defendant seeks to compel arbitration based on an arbitration agreement signed by Plaintiff encompassing the Complaint's claims. (See Tang Decl. Ex. A.) Alternatively, Defendant seeks to stay the action.

Plaintiff opposes. Plaintiff argues that there is no agreement to arbitrate and that the PAGA claims are not subject to arbitration.

## EVIDENTIARY RULINGS

Plaintiff objects to portions of the Declaration of Stanley Tang, who is Defendant's Chief Product Officer.

The Court rules as follows: (1) overruled; (2) overruled; (3) overruled; and (4) overruled.

## LEGAL STANDARDS

A proceeding to compel arbitration is in essence a suit in equity to compel specific performance of a contract. (*Freeman v. State Farm Mutual Auto Insurance Co*. (1975) 14 Cal.3d 473, 479.) Such enforcement may be sought by a party to the arbitration agreement. (Code Civ. Proc., § 1280, subd. (e)(1).)

The petition to compel arbitration functions as a motion and is to be heard in the manner of a motion, i.e., the facts are to be proven by affidavit or declaration and documentary evidence with oral testimony taken only in the court's discretion. (Code Civ. Proc., §1 290.2; *Rosenthal v. Great Western Fin. Securities Corp*. (1996) 14 Cal.4th 394, 413-414.) The petition to compel must set forth the provisions of the written agreement and the arbitration clause verbatim, or such provisions must be attached and incorporated by reference. (Cal. Rules of Court, rule 3.1330; see *Condee v. Longwood Mgmt. Corp*. (2001) 88 Cal.App.4th 215, 218-219.)

"There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate." (*Engineers & Architects Assn. v. Community Development Dept*. (1994) 30 Cal.App.4th 644, 653.) Nevertheless, the strong public policy promoting private arbitration of civil disputes gives rise to a presumption in favor of arbitrability (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 502), imposes the burden of proof on the party resisting arbitration (*Coast Plaza Doctors Hospital v. Blue Cross of Cal.* (2000) 83 Cal.App.4th 677, 686-687), and compels the Court to construe liberally the terms of the arbitration agreement (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 738) and resolve all doubts in favor of arbitration (*Vianna v. Doctors' Management Co.* (1994) 27 Cal.App.4th 1186, 1189).

## DISCUSSION

<u>Existence and scope of an arbitration agreement</u>

Plaintiff argues that there is no agreement to arbitrate, specifically because the arbitration clause is within a "browserwrap agreement."

In ruling on a motion to compel arbitration, the court must determine whether a valid agreement to arbitration exists, and if it does, whether the agreement encompasses the dispute at issue. (*Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 961.)

Here, Defendant proffers the declaration of Stanley Tang, its Chief Product Officer, which explains the process by which Plaintiff electronically signed the arbitration agreement. Specifically, Plaintiff created an account and had to agree to the Independent Contractor Agreement by checking a check-box section in which Plaintiff had to manifest his assent (Tang Decl. ¶¶ 5-10, Ex. A-C.) The Independent Contractor Agreement has an arbitration clause. (Tang Decl. Ex. A. § XI.) Additionally, Plaintiff had an opportunity to further opt out of the arbitration agreement within 30 days, but he did not do so. (Tang Decl. ¶¶ 11-12.)

Accordingly, the Court finds that Defendant demonstrates by a preponderance of the evidence that Plaintiff signed the subject agreement.

Nevertheless, Plaintiff argues that his signature does not indicate his consent to arbitrate.

"While the law favors arbitration as an expeditious and cost-effective way to resolve disputes, consent of the parties is required." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 845.) The requirement of consent "applies with equal force to arbitration provisions contained in contracts purportedly formed over the Internet." (*Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 862.)

There are two types of Internet contracts: (1) "clickwrap" (or "click-through") agreements in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and (2) "browserwrap" agreements, where a website's terms and conditions of use are generally posted on the website by way of a hyperlink at the bottom of the screen. (*Id.* at pp. 862-863.)

Here, as discussed above, the subject agreement is more of a "clickwrap" agreement and not a "browserwrap" agreement. Plaintiff was required to select a check-box in which Plaintiff had to

manifest his assent. (Tang Decl. ¶ 7, Ex. A-B.) Additionally, Plaintiff argues that an individual can sign up to be a driver without selecting this box, but does not cite any authority from the record. (Opposition 7:6-7.) Although there is no evidence that Plaintiff actually read the arbitration agreement, that is not a requirement in order to find that a "clickwrap" agreement is enforceable. Even if the Court did not find that the agreement is a "clickwrap" agreement, Plaintiff at a minimum had constructive notice of the arbitration agreement's terms. Defendant shows that it put Plaintiff on sufficient notice of the terms by requiring Plaintiff to select the check-box. Notably, the Court notes that the signup page's design was simple and straightforward and  provided reasonable and sufficient notice to allow Plaintiff to access the arbitration agreement near the signup button, as opposed to being buried or hidden. (See Tang Decl. Ex. B.)

Accordingly, the Court finds that there was an agreement to arbitrate.

<u>Whether PAGA claims are subject to arbitration</u>

Plaintiff argues that the PAGA claims are not subject to arbitration because the PAGA waiver is unenforceable.

A judge may invalidate an arbitration agreement that contains provisions that are contrary to public policy. (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 721.) An arbitration agreement that requires an employee, as a condition of employment, to give up the right to bring representative PAGA actions in any forum is contrary to public policy and unenforceable as a matter of state law. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382-384 (*Iskanian*).)

First, it is immaterial whether Plaintiff's waiver was compelled as a condition of employment, or that he could have opted out later. (See *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1121-1123.)

Defendant argues that the Federal Arbitration Act ("FAA") preempts the *Iskanian* rule and that the U.S. Supreme Court's ruling in *Epic Systems* and subsequent cases abrogate *Iskanian*.

The Court disagrees. *Iskanian* remains good law regarding the nonenforceability of blanket PAGA waivers because the U.S. Supreme Court's ruling in *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612 (*Epic Systems*) did not rule on the precise issue presented and determined

4

in *Iskanian*. (See generally *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 619-620.) Defendant does not otherwise cite any supporting authority that decides the issue (i.e., PAGA actions) in *Iskanian* differently. Defendant's reliance on narrow language in *Epic Systems* and other U.S. Supreme Court cases is insufficient.

*Iskanian* requires that Plaintiff be ordered to individually arbitrate his claim to the extent he made one. (*Esparza v. KS Industries, L.P.* (2017) 13 Cal.App.5th 1228, 1247.) Here, Plaintiff does not make an individual claim, as his prayer is clear that he seeks civil penalties only "on behalf of all aggrieved employees." (Complaint prayer ¶ 1.) Plaintiff is not required to arbitrate any part of the PAGA claim that seeks to recover civil penalties on behalf of the State of California.

Accordingly, the Court denies Defendant's request to compel arbitration.

Whether the Court should stay this action

Defendant alternatively requests that the Court to stay this action because of the overlap involving other actions.

A judge must order a stay of pending litigation, on a party's motion, while a related arbitration is proceeding until the arbitration is resolved. (Code Civ. Proc., § 1281.4.) The purpose of the stay is to protect the arbitrator's jurisdiction by preserving the status quo until the arbitration is resolved. (*MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643, 660.)

Any party to a judicial proceeding is entitled to a stay of those proceedings when the arbitration of a controversy has been ordered and that controversy is also an issue involved in the pending judicial proceeding; it is irrelevant whether the party requesting the stay is a party to the arbitration agreement. (*Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152.) A controversy can be a single question of law or fact. (*Ibid.*)

The Court finds that a stay is appropriate here. There is six other PAGA actions filed against Defendant that seek the same penalties on behalf of the same group of California delivery providers. Without a stay, this case would interfere with those actions and many pending arbitrations concerning Defendant's alleged misclassification of its delivery providers as independent contractors. A stay promotes efficiency and equity so that the other actions can continue in an orderly way.

5

Additionally, there is sufficient overlap of the issues to warrant a stay. Indeed, the issue presented here—whether all employees were misclassified—could easily encompass the issue of whether the various specific employees were misclassified. Logically, whether the individual employees were misclassified might be characterized as a component in the process of determining of whether all employees were misclassified. Finally, Plaintiff incorrectly argues that this issue involving an affirmative defense does not permit a stay.

Accordingly, the Court stays Plaintiff's claim for representative PAGA penalties pending the outcome of one or more of the other PAGA actions, during the pendency of which stay periodic telephonic status conferences will be convened to enable the Court to stay abreast of the other proceedings as such proceedings might bear on this case.

## **CONCLUSION**

The Court denies Defendant's request to compel arbitration.

The Court stays this action pending further proceedings in the other actions.

The Court sets a Status Conference on December 17, 2019 at 8:30 a.m. If there are determinations in any of the other proceedings that bear substantially on this case, the Court would expect that counsel would promptly apprise this Court of such developments.

**Case Number:** 19STCV15663   **Hearing Date:** September 24, 2019   **Dept:** 58

1

**Proof of Service**

2

I, Veronica Guerrero, declare as follows:

3

I am employed in the County of Los Angeles, State of California, I am over the age of
eighteen years and am not a party to this action; my business address is 333 South Grand Avenue,
Los Angeles, CA  90071-3197, in said County and State.  On September 26, 2019, I served the
following document(s):

4

5

**NOTICE OF RULING**

6

on the parties stated below, by the following means of service:

7

8       Kashif Haque
        Samuel A. Wong
9       Jessica L. Campbell
        Suren N. Weerasuriya
10      AEGIS LAW FIRM, PC
        9811 Irvine Center Drive, Suite 100
11      Irvine, California 92618
        Telephone: (949) 379-6250
12      Facsimile: (949) 379-6251
        Email: khaque@aegislawfirm.com
13      Email: swong@aegislawfirm.com
        Email: jcampbell@aegislawfirm.com
14      Email: sweerasuriya@aegislawfirm.com

15

☑       **BY OVERNIGHT DELIVERY:** On the above-mentioned date, I enclosed the documents
16      in an envelope or package provided by an overnight delivery carrier and addressed to the
        persons at the addresses shown above. I placed the envelope or package for collection and
17      overnight delivery at an office or a regularly utilized drop box of the overnight delivery
        carrier with delivery fees paid or provided for.

18

19

☑       I declare under penalty of perjury under the laws of the State of California that the foregoing
20      is true and correct.

21      Executed on September 26, 2019.

22

23

_____
24                              Veronica Guerrero

25

26

27

28

NOTICE OF RULING                                                    CASE NO. 19STCV13945

# EXHIBIT H

**FILED**
Superior Court of California
County of Los Angeles

APR 1 8 2019

Sherri R. Carter, Executive Officer/Clerk
By _Deowkiell_, Deputy
Shannon Mansfield

*Superior Court of California*

*County of Los Angeles*

*Department 26*

1

2

3

4

5   DANA LOWE,                                Case No.:  BC715425

6            Plaintiff,

7        v.                                    Hearing Date:  April 18, 2019

8

9   DOORDASH, INC., *et al.*,                  [~~TENTATIVE~~] ORDER RE:

            Defendants.                        DEFENDANTS' MOTION TO
10                                             COMPEL ARBITRATION

11

12

13  **BACKGROUND**

14
         On July 26, 2018, plaintiff Dana Lowe ("Plaintiff") commenced this PAGA enforcement
15
    action against defendant Doordash, Inc. ("Defendant").  Plaintiff brings a sole claim for civil
16
    penalties for violations of California Labor Code, pursuant to PAGA, §§ 2698, et seq.
17
         On September 14, 2018, Defendants filed the instant motion to compel arbitration
18
    pursuant to an arbitration agreement that was entered into at the time of Plaintiff's hiring.  On
19
    January 17, 2019, Plaintiff filed an opposition.  On January 24, 2019, Defendant filed a reply.
20
         On April 15, 2019, Defendant filed a notice of supplemental authority in support of the
21
    motion.  These supplemental papers attach as copies rulings from the Orange County Superior
22
    Court as well as the San Francisco Superior Court.  First, the Court notes that these supplemental
23
    papers are untimely per CCP section 1005(b).  Second, the orders that Defendant attaches are at
24
    best persuasive authority that is not binding on this Court.  On April 17, 2019, Plaintiff also filed
25
    an untimely notice of new authority.
26

27

28

                                              1

**LEGAL STANDARD**

California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability. (*See Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-72.) Under CCP § 1281, a "written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

(a) The right to compel arbitration has been waived by the petitioner; or

(b) Grounds exist for the revocation of the agreement.

(c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . ." (CCP §1281.2.)

The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. (*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.* (1998) 68 Cal.App.4th 83, 88.) When presented with a petition to compel arbitration, the trial court's first task is to determine whether the parties have in fact agreed to arbitrate the dispute. (*Id.*)

"*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394] explained: '[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.

2

Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence.  If the party opposing the petition raises a defense to enforcement—either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation (see §1281.2(a), (b))—that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense.' (*Rosenthal*, supra, at 413.)  According to *Rosenthal*, facts relevant to enforcement of the arbitration agreement must be determined 'in the manner . . . provided by law for the . . . hearing of motions.' (*Rosenthal*, supra, at 413, quoting §1290.2.)  This 'ordinarily mean[s] the facts are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion.' (*Rosenthal*, supra, at 413–414; . . .)." (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761-62.)

**DISCUSSION**

    Existence of an agreement to arbitrate

    Under both the Federal Arbitration Act and California law, arbitration agreements are valid, irrevocable, and enforceable, except on such grounds that exist at law or equity for voiding a contract. (*Winter v. Window Fashions Professions, Inc.* (2008) 166 Cal.App.4th 943, 947.)  In ruling on a motion to compel arbitration, the court must first determine whether the parties actually agreed to arbitrate the dispute, and general principles of California contract law help guide the court in making this determination. (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.)  "With respect to the moving party's burden to provide evidence of the *existence* of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1160 (emphasis in original).)

3

Defendant asserts that at the time of Plaintiff's hiring on August 21, 2015, pursuant to Defendant's onboarding policies, Plaintiff signed a hard copy arbitration agreement. (Tang Decl. ¶¶ 5-6.) Subsequently, the arbitration agreement was supplemented, and Plaintiff electronically acknowledged and agreed to the terms of the arbitration agreement. (*Id.* ¶¶ 7, 10-12.) Defendant contends that pursuant to the arbitration agreement, Plaintiff agreed to arbitrate all employment related claims with Defendant.

The initial arbitration agreement provides the following:

> **11. ARBITRATION AND CLASS ACTION WAIVER. Contractor and Company agree that final and binding arbitration will be the exclusive means of resolving any disputes between Contractor and Company. Any such disputes shall be resolved by pursuant to the commercial rules of the American Arbitration Association (AAA) and such arbitration shall be held in Palo Alto, California. Judgment on any award rendered by the arbitrator may be entered in any court having jurisdiction over the award. Contractor and Company agree to bring any disputes in arbitration on an individual basis only and not as a class or other collective action basis. Accordingly, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class or other collective action. This class and collective action waiver shall not be severable from this Agreement in any case in which the dispute is filed as such a class or collective action and a civil court of competent jurisdiction finds that this waiver is unenforceable. In such instance, the class or collective action must be litigated in a civil court of competent jurisdiction.**
> (Tang Decl. Ex. A.)

The arbitration agreement is signed by Plaintiff and dated August 21, 2015. (Tang Decl. Ex. A.) The electronic arbitration provision in relevant part provides as follows:

> **IMPORTANT: PLEASE REVIEW THIS AGREEMENT CAREFULLY., IN PARTICULAR, PLEASE REVIEW THE MUTUAL ARBITRATION PROVISION IN SECTION XI, AS IT REQUIRES THE PARTIES (UNLESS YOU OPT OUT OF ARBITRATION AS PROVIDED BELOW) TO RESOLVE DISPUTES ON AN INDIVIDUAL BASIS, TO THE FULLEST EXTENT PERMITTED BY LAW, THROUGH FINAL AND BINDING ARBITRATION. BY DIGITALLY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS, INCLUDING SECTION XI, AND HAVE TAKEN THE TIME AND SOUGHT ANY ASSISTANCE NEEDED TO COMPREHEND THE CONSEQUENCES OF SIGNING THIS AGREEMENT.**
> ...
> XI. MUTUAL ARBITRATION PROVISION 1. CONTRACTOR and DOORDASH mutually agree to resolve any justiciable disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court. This arbitration agreement is

governed by the Federal Arbitration Act (9 U.S.C. §§1-16) ("FAA") and shall apply to any and all claims arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of Contracted Services to consumers, the payments received by CONTRACTOR for providing services to consumers, the termination of this Agreement, and all other aspects of CONTRACTOR'S relationship with DOORDASH, past, present or future. Whether arising under federal, state or local statutory and/or common law, including without limitation harassment, discrimination or retaliation claims and claims arising under or related to the Civil Rights Act of 1964 (or its State or local equivalents), Americans With Disabilities Act (or its state or local equivalents), Age Discrimination in Employment Act (or its state or local equivalents), Family Medical Leave Act (or its state or local equivalents), or Fair Labor Standards Act (or its state or local equivalents), state and local wage and hour laws, state and local statutes or regulations addressing the same or similar subject matters; and all other federal, state or local claims arising out of or relating to CONTRACTOR's relationship or the termination of that relationship with DOORDASH. The parties expressly agree that this Agreement shall be governed by the FAA even in the event CONTRACTOR and/or DOOR DASH are otherwise exempted from the FAA. Any disputes in this regard shall be resolved exclusively by an arbitrator. In the event, but only in the event, the arbitrator determines the FAA does not apply, the state law governing arbitration agreements in the state in which the CONTRACTOR operates shall apply.

PENDING CLAIM EXCLUSION: This Mutual Arbitration Agreement, including the Class Action Waiver (below), does not apply to the lawsuit titled Edwards v DoorDash, Inc. — Case No. 4:16-cv-02255, United States District Court for the Southern District of Texas — Houston Division ("Edwards Lawsuit', which asserts wage and hour claims related to employment status. Rather, regardless of whether CONTRACTOR opts out of this Mutual Arbitration Agreement, any prior arbitration agreement between CONTRACTOR and DOOR DASH that would otherwise cover the claims in the Edwards Lawsuit will remain in full force and effect as to that case, including without limitation any class and/or collective action waiver (entitled "Class Action Waiver" or otherwise), regardless of any other provision of Section Xl.
...

3. Class Action Waiver. CONTRACTOR and DOORDASH mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action and/or representative action, and an arbitrator shall not have any authority to hear or arbitrate any class, collective or representative action ("Class Action Waiver"). Notwithstanding any other clause contained in this Agreement or the AAA Rules, as defined below, any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Class Action Waiver is unenforceable, the class, collective and/or representative action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration. Notwithstanding any other clause contained in this Agreement or the AAA Rules, as defined below, any claim that all or part of this Class Action Waiver any claim that all or part of this Class Action

Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator. All other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court.

... (Tang Decl. Ex. B.)

Stanley Tang, Defendant's Chief Product Officer, attests to the fact that Defendant's records reflect that Plaintiff accepted the electronic arbitration agreement on September 6, 2016. (Tang Decl. ¶ 10.)

Plaintiff does not dispute Defendant's contention that at the time Plaintiff began working for Defendant, Plaintiff signed a physical arbitration agreement and subsequently electronically signed a supplemental arbitration agreement. Rather, Plaintiff contends that pursuant to California precedent, waiver of PAGA claims are unenforceable.[1] Plaintiff contends that Plaintiff is not seeking "individual relief" or damages to compensate herself or anybody else for unpaid wages, overtime, missed meal and rest periods, business expenses, etc. Instead, consistent with PAGA's purpose, Plaintiff only is seeking to assess civil penalties against Defendant on behalf of herself, other employees, and the State of California, for alleged violations of the Labor Code committed against aggrieved employees. Plaintiff argues that Defendant has failed to put forth sufficient evidence to establish that the FAA applies to the instant matter. Moreover, Plaintiff argues that pursuant to the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC (Iskanian)*, 59 Cal.4th 348 (2014) and its progeny, representative action waivers are unenforceable as to actions brought under PAGA.

As such, the issue before the Court is whether Plaintiff's PAGA action is arbitrable in light of prevailing precedent.

---

[1] Plaintiff notes that "[b]ecause binding California Supreme Court precedent controls the disposition of this motion, Plaintiff proceeds by challenging the validity of the PAGA waiver. Plaintiff reserves any challenge to the formation or validity of the other sections of the arbitration agreement and reserves the right to invoke formation or contract defenses if necessary later in litigation." (Opp. at 5 fn. 1.)

*Applicability of the Federal Arbitration Act ("FAA")*

Plaintiff argues that Defendant has failed to put forth sufficient evidence to establish that the FAA applies to the instant matter.

"A party seeking to enforce an arbitration agreement has the burden of showing FAA preemption." (*Lane v. Francis Capital Mgmt. LLC* (2014) 224 Cal.App.4th 676, 684.) Labor Code section 229 allows actions "for the collection of due and unpaid wages claimed by an individual [to be] maintained without regard to the existence of any private agreement to arbitrate." (Lab. Code, § 229.)  However, the FAA preempts section 229 over agreements governed by the FAA. (*Performance Team Freight Sys., Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, 1239-40.)

In pertinent part, the FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) To give effect to the intent of Congress in enacting the FAA, courts broadly construe the term "involving commerce." (*See Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 268.) The FAA applies to arbitration agreements if the economic activity at issue, when considered in the aggregate, bears on interstate commerce in a substantial way, even if the particular conduct of the parties does not itself affect interstate commerce.  (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56-57.)

For example, in *Khalatian v. Prime Time Shuttle, Inc.* (2015) 327 Cal.App.4th 651, the court held that the arbitration agreement regarding plaintiff's employment, driving shuttles only in California, involved interstate commerce because "the passengers using the employer's service often traveled from other states[ ] [and] passengers purchased package deals on the Internet which included hotel accommodations, airfare, and vouchers for free airport

transportation which the customers used to board the employer's airport shuttles." (*Id.* at pp. 657-658.)

In reply Defendant argue that the FAA applies because Defendant is engaged in interstate commerce as stated in the declarations of Stanley Tang and Defendant's director of supply operations, Cody Aughney.  Defendant contends that the FAA applies in this case because Plaintiff's employment contract involves commerce, as broadly defined by statute and caselaw. Defendant points to caselaw holding that businesses with multi-state operations, such as Defendant's providing food delivery services that involve the use of the internet, are engaged in "commerce" for purposes of the FAA. (*Allied-Bruce Terminix Companies, Inc., supra,* 513 U.S. 265, 282 [holding that "the multi-state nature" of defendants' business operations satisfied FAA's commerce requirement]; *Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1286-1287.)

The declaration of Stanley Tang describes Defendant as follows:

> DoorDash is a technology startup headquartered in San Francisco, California that facilitates food delivery through its online platform. DoorDash's platform connects customers, a broad array of restaurants, and independent contractor delivery providers ("contractors"). Customers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone. Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device.  (Tang Decl. ¶ 4.)

Additionally, according to the declaration of Cody Aughney,[2] Defendant's business is conducted throughout the United States and is directly involved in interstate commerce. (Aughney Decl. ¶ 4.)  In particular, Defendant engages in a multistate business, allowing

---

[2] Though the Aughney declaration was offered among the reply papers, it is offered in response to Plaintiff's contention in the opposition that Defendant is not engaged in interstate commerce and thus the FAA does not apply. Thus, the Court exercises its discretion to consider the Aughney declaration. (*See California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 861 [stating that the trial court has discretion whether to accept new evidence with reply papers.]; *see also Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308.)

8

"Dashers" to accept delivery opportunities in approximately 45 states, such as California, Washington, Minnesota, Texas, Indiana, Arizona, Illinois, Massachusetts, New York, Georgia, the District of Columbia and throughout Canada. (*Id.*) Additionally, Defendant's mobile application (the "DoorDash app") is Internet-based, and transactions conducted via the DoorDash app involve instrumentalities of interstate commerce including the Internet, and technological infrastructure in various states. (*Id.* ¶ 5.) Additionally, Defendant operates offices that engage in business in each of the states where Dashers are able to accept delivery opportunities, and Defendant advertises its platform to potential customers, Dashers, restaurants, and other businesses on the Internet. (*Id.* ¶¶ 6.) Moreover, Dashers are able to accept delivery opportunities both in the state where they first signed up to become a Dasher and in any other state in which Defendant operates. (*Id.* ¶¶ 7-8.)

The Court finds that Defendant's evidence establishes that Plaintiff's contract with Defendant involved interstate commerce for purpose of applying the FAA. The Court further notes that the arbitration agreement that was electronically signed by Plaintiff explicitly states that the arbitration agreement is governed by the FAA. (Tang Decl. Ex. B.)

Therefore, the Court finds that the FAA applies in this matter.[3]

*Arbitrability of PAGA Claims*

Plaintiff argues that the arbitration agreement requires Plaintiff to waive Plaintiff's representative PAGA claims and that this waiver is invalid pursuant to *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348.

---

[3] Plaintiff briefly notes that Defendant's agreement is likely exempted from the FAA as a "contract[] of employment of ... workers engaged in ... interstate commerce." 9 U.S.C. §1." (Opp. at 7:9-12.) However, the opposition fails to analyze and explain why or how such an exemption applies and what evidence supports a finding that the exemption applies.

9

In *Iskanian,* the California Supreme Court examined whether an employee's right to bring a PAGA action is waivable. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382.)  After reviewing the relevant statutes and case law, the Court came to the conclusion that an employee's right to bring a PAGA action is unwaivable.  (*Id*. at 383.)  The Court reasoned as follows: "The unwaivability of certain statutory rights 'derives from two statutes that are themselves derived from public policy. First, Civil Code section 1668 states: 'All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.' 'Agreements whose object, directly or indirectly, is to exempt [their] parties from violation of the law are against public policy and may not be enforced.' (*citation*.) Second, Civil Code section 3513 states, 'Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' "(*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100, 99 Cal.Rptr.2d 745, 6 P.3d 669 (*Armendariz* ).)  (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382–383.)  The Court concluded that where an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.)

The *Iskanian* Court proceeded to note that the Federal Arbitration Act (FAA) does not preempt the state law rule against waiver of an employee's right to bring a representative Private Attorney General Act (PAGA) action because the FAA aims to ensure an efficient forum for the resolution of **private disputes** whereas a PAGA action is a dispute between an **employer and the state Labor and Workforce Development Agency**, any resulting judgment is binding on

10

1    the state, and any monetary penalties largely go to state coffers.  (*Iskanian v. CLS Transportation*

2    *Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.)[4]

3         Based on the holding in *Iskanian*, Plaintiff's PAGA action is not subject to arbitration.

4    (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384; *see also*

5    *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 645 [holding that a petitioner's single

6    cause of action under PAGA cannot be split into an arbitrable "individual claim" and a

7    nonarbitrable representative claim.].)  As such, the Court finds that the provision of the

8    arbitration agreement that waives any PAGA claim is void and unenforceable.

9

10

11        *Intervening Precedent*

12        Defendant cites to *Epic Sys. Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1619 for the

13   proposition that the United States Supreme Court recently reiterated that courts must enforce

14   arbitration agreements according to their terms, and the FAA preempts any state rule that

15   disfavors arbitration or interferes with the parties' agreement to arbitrate their disputes on an

16   individual basis.  In particular, Defendant argues that *Epic Systems* abrogates California's so

17   called *Iskanian* rule which provides that employees cannot waive representative PAGA actions

18   in favor of individualized arbitration.  Defendant asserts that pursuant to *Epic Systems*, this Court

19   should compel Plaintiff's PAGA claim to individual arbitration

20

21        The Court is unpersuaded by Defendant's contention.  *Iskanian* has neither been

22   overruled nor abrogated.  In fact, in the recent decision of *Correia v. NB Baker Electric, Inc.*

23   (2019) 32 Cal.App.5th 602, 622, 623, the Court of Appeal held that despite the recent United

24   States Supreme Court decision in *Epic*, *Iskanian* remains binding precedent.  In *Correia*, former

25

26

27   [4] Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the Labor and Workforce Development Agency or aggrieved employees—that the employer has violated the Labor Code. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 386–387.)

28

employees filed an action against their former employer for breach of contract, statutory unfair competition, and wage and hour violations and sought civil penalties under PAGA for wage and hour violations. The employer filed a petition for arbitration of all claims, which the trial court granted as to all causes of action except for the PAGA claim. The Court of Appeal found that although the *Epic* court reaffirmed the broad preemptive scope of the Federal Arbitration Act (FAA), *Epic*[5] did not address the specific issues before the *Iskanian* court involving a claim for civil penalties brought on behalf of the government and the enforceability of an agreement barring a PAGA representative action in any forum.  Moreover, since *Iskanian*, several California Courts of Appeal have held that a PAGA arbitration requirement in a pre-dispute arbitration agreement is unenforceable based on *Iskanian*'s view that the state is the real party in interest in a PAGA claim and that the state must have consented to the arbitration agreement to effectively waive the right to bring the PAGA claim in court.  (*See e.g. Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 673.)  The *Correia* court declined to apply the federal decisions that have reached a different conclusion regarding the arbitrability of a PAGA representative claim and found these decisions unpersuasive because the courts did not fully consider the implications of the qui tam nature of a PAGA claim on the enforceability of an employer-employee arbitration agreement.

Likewise, in *Zakaryan v. Men's Wearhouse, Inc.*, ___ Cal.App.5th ___, 2019 WL 1397034 (Mar. 28, 2019), the Second District Court of Appeal, Division 2 concluded that the holding of *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 358 (2014), which invalidates pre-dispute waivers forfeiting the right to bring a representative action under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), survives the United States

---

[5] *Epic* concerned an employee who brought putative collective and class action against an employer, alleging that employer violated Fair Labor Standards Act (FLSA) and Wisconsin law by misclassifying him and his fellow employees and thereby depriving them of overtime pay.  (*Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612, 1616.)

12

Supreme Court decision in *Epic Systems v. Lewis*. Thus, it remains the case that a former employer is not entitled to compel arbitration of a PAGA claim based on a pre-dispute arbitration agreement absent evidence that the State has consented to waiver of the right to bring the PAGA claim in court. (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622, 625; *Zakaryan v. Men's Wearhouse, Inc.*, ___ Cal.App.5th ___, 2019 WL 1397034 (Mar. 28, 2019).)

Thus, the Court rejects Defendant's suggestion that it should depart from *Iskanian* either as wrongly decided or as abrogated by intervening United States Supreme Court precedent. As an inferior state court, this Court is bound to follow the California Supreme Court's holding in *Iskanian* under the doctrine of stare decisis. (*Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 673.) More specifically, in the absence of a subsequent contrary decision of the United States Supreme Court, this Court is bound by the California Supreme Court's holding on the issue of federal law that Defendant contends was wrongly decided in *Iskanian* (i.e., FAA does not preempt California's bar against compelled waiver of a PAGA representative action). (*Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 673.) In sum, this Court chooses to follow California precedent holding that that this Court is bound to follow *Iskanian*'s holdings that representative action waivers are unenforceable under state law and that this rule is not preempted by the FAA. (See *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622, 625; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 674.)

*Stay of Action and Compelling Arbitration of Plaintiff's Individualized Claims*

Defendant next argues that under binding case law, claims for unpaid wages and other individualized damages are arbitrable, even if they are nominally styled as "PAGA claims." (citing *Esparza v. KS Indus., L.P.* (2017) 13 Cal.App.5th 1228, 1234.) Defendant contends that because Plaintiff brings several claims for individualized damages, those claims must proceed to arbitration. Plaintiff opposes on the ground that Plaintiff's action is brought solely on a

13

representative base and that Plaintiff does not seek any individualized claims such as claims for unpaid wages, as were present in *Esparza*.

Generally, every PAGA action seeking penalties " '*is* a representative action on behalf of the state.' " (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 625 citing *Iskanian, supra,* 59 Cal.4th at p. 387, 173.) Thus, a single representative claim cannot be split into an arbitrable individual claim and a nonarbitrable representative claim. (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 625 [citing *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649, 188 Cal.Rptr.3d 83].)

Based on *Correia*, the Court finds that it would be improper to split Plaintiff's representative claims into an arbitrable individual claim and a nonarbitrable representative claim.

Defendant's reliance on *Esparza* is misplaced.  Unlike the situation in *Esparza*, Plaintiff's prayer for damages here makes no claim for unpaid wages.  Instead, Plaintiff seeks civil penalties and attorney's fees, as well as a declaration that Defendant violated several statutory provisions.  Moreover, Plaintiff's complaint and opposition make clear that Plaintiff is solely seeking civil penalties.  (Opp. at 15:5-10.) Thus, in the instant case, there are no individualized claims for unpaid wages that are subject to arbitration pursuant to the terms of the parties' arbitration agreement and the Federal Arbitration Act.

Moreover, the Second District Court of Appeal has recently rejected the reasoning of *Esparza*.  In *Zakaryan v. Men's Wearhouse, Inc.*, ___ Cal.App.5th ___, 2019 WL 1397034 (Mar. 28, 2019), the Court found that the plain language of PAGA does not permit individualized relief under section 558, as section 2699(i) authorizes that "all civil penalties recovered" by the aggrieved employee be divided 75% to the state and 25% to the aggrieved employees. (*Zakaryan*, 2019 WL 1397034, at *6.) Because PAGA's text does not allow for "individualized" recovery of civil penalties, section 558 penalties cannot be distributed to individual employees so as to render that portion arbitrable.

14

For the first time in its reply papers, Defendant argues that the issue of whether Plaintiff's individualized claims should be arbitrated should be determined by an arbitrator. This argument is not made in response to any arguments made by Plaintiff in the opposition. As such, the Court has the discretion to refuse to consider such a new issue because Plaintiff was not afforded an opportunity to respond to it. (*See Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766. Regardless, as analyzed above, Plaintiff's prayer in the complaint does not include a prayer for unpaid wages or other individualized harm. Rather, Plaintiff solely seeks civil penalties and attorney's fees, as well as a declaration that Defendant violated several statutory provisions. As such, the complaint does not include claims that should be determined by an arbitrator.

*Stay of Action Pending Other Related Arbitration Proceedings*

Defendant finally argues that the instant action should be stayed pursuant to Code of Civil Procedure section 1281.4 due to overlapping arbitrations and the earlier-filed *"Marko"* PAGA action. Defendant asserts that Code of Civil Procedure section 1281.4 requires courts to stay any litigation that overlaps with a pending arbitration, and here, there are at least fourth other cases pending against Defendant, all of which purport to represent the State of California asserting the same PAGA claim —and this case is not the first in line. Defendant asserts that the *"Marko* action", for example, predates Plaintiff's PAGA claim and covers a longer period of time, making it a more efficient and effective vehicle for resolving these issues. (citing to *Marko v. DoorDash, Inc.* (L.A. Super. Ct. No. BC659841).) Defendant explains that Defendant petitioned to compel arbitration of the *Marko* case, and the Superior Court granted the petition in part. (Moving Papers Ex. C.) The court compelled arbitration on the issue of the *Marko* plaintiffs' independent contractor status and damages on an individual basis. (*Ibid.*) It stayed resolution of the *Marko* plaintiffs' public injunctive relief claims and PAGA claims pending the resolution of the arbitrations. (*Ibid.*) Defendant asserts that Marko's and other plaintiffs'

15

arbitrations are still pending, with arbitrations scheduled for May and June 2019. Thus, Defendant asserts that this Court should stay Plaintiff's PAGA claim in favor of that earlier filed action.

At the hearing on this motion, Plaintiff sought to raise new arguments that were not adequately fleshed out in Plaintiff's opposition. Thus, the Court continues this portion of the motion –relating solely to Defendant's request for a stay of this action pending other related arbitration proceedings – to allow the parties to submit supplemental briefing.

**CONCLUSION**

Defendant's motion to compel arbitration is denied. Defendant's motion to stay the action pending the resolution of the arbitration in the previously filed "*Marko* action is CONTINUED to August 29, 2019 at 8:30 am. No later than August 1, 2019, Plaintiff must efile and serve a supplemental opposition no longer than 10 pages in length addressing Defendant's motion to stay. No later than August 15, 2019, Defendant must efile and serve a supplemental reply no longer than 10 pages in length addressing its motion to stay. The parties are ordered to deliver conformed courtesy copies of their filings directly to Department 26 on the same day as efiling. The case is stayed pending the Court's final ruling on this motion. The case management conference is also CONTINUED to August 29, 2019 at 8:30 am.

At the hearing on this motion, the parties waived notice.


DATED: April 18, 2019


_____
Elaine Lu
Judge of the Superior Court

16