Mike Arias (SBN 115385)
   mike@aswtlawyers.com
Alfredo Torrijos (SBN 222458)
   alfredo@aswtlawyers.com
**ARIAS SANGUINETTI WANG**
   **& TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Tel: (310) 844-9696 / Fax: (310) 861-0168

Richard S. Cornfeld (Admitted Pro Hac Vice)
   rcornfeld@cornfeldlegal.com
Daniel Scott Levy (Admitted Pro Hac Vice)
   dlevy@cornfeldlegal.com
**LAW OFFICE OF RICHARD S. CORNFELD, LLC**
1010 Market Street, Suite 1645
St. Louis, Missouri 63101
Tel: (314) 241-5799 / Fax: (314) 241-5788

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER PETER and KARSON THEISS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DOORDASH, INC., a Delaware corporation,<br><br>Defendant. | Case No. 4:19-cv-06098-JST<br><br>HON. JON S. TIGAR<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br><u>Hearing</u><br>Date: January 29, 2020<br>Time: 2:00 9.m.<br>Courtroom.: 6 – 2nd Floor |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II. THIS COURT—AND NOT AN ARBITRATOR—DETERMINES QUESTIONS OF CONTRACT FORMATION ..................................................... 2

III. PLAINTIFFS DID NOT AGREE TO ARBITRATE THEIR CLAIMS ................ 4

    A.  Arbitration May Be Compelled Only When a Valid Agreement to Arbitrate Exists. .............................................................................................. 4

    B.  No Valid Agreement to Arbitrate Was Formed. ............................................ 5

        1.  Plaintiffs Lacked Actual Knowledge of the Arbitration Provision. ............................................................................................... 10

        2.  DoorDash Did Not Provide Inquiry Notice of Its Arbitration Provision. ............................................................................................... 10

IV. CONCLUSION .................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*AT&T Techs., Inc. v. Communications Workers of America*
    475 U.S. 643 (1986)..................................................................................................4

*Be In, Inc. v. Google Inc.*
    2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ..................................................8, 10

*Berkson v. Gogo LLC*
    2015 WL 1600755 (April 9, 2015)..........................................................................8

*Binder v. Aetna Life Ins. Co.*
    75 Cal.App.4th 832 (1999) ......................................................................................6

*Cairo, Inc. v. Crossmedia Servs.*, Inc.
    2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ........................................................10

*Campos v. Campos Family Farms, LLC*
    2012 WL 2090303 (E.D. Cal. June 8, 2012) .......................................................4

*Colgate v. JUUL Labs, Inc.*
    402 F.Supp.3d 728 (N.D. Cal. 2019)................................................................7, 9

*Comer v. Micor, Inc.*
    436 F.3d 1098 (9th Cir. 2006) ................................................................................4

*Conservatorship of Link*
    158 Cal.App.3d 138 (1984) ...................................................................................12

*Eiess v. USAA Fed. Sav. Bank*
    2019 WL 3997463 (N.D. Cal. Aug. 23, 2019) .......................................1, 3, 5, 6

*First Options of Chicago, Inc. v. Kaplan*
    514 U.S. 938 (1995)...................................................................................................5

*Galilea, LLC v. AGCS Mar. Ins. Co.*
    879 F.3d 1052 (9th Cir. 2018) ................................................................................3

*Gonzalez v. Citigroup, Inc.*
    2011 WL 4374997 (E.D. Cal. Sept. 19, 2011) ....................................................5

*In re Zappos.com, Inc. Customer Data Sec, Breach Litig.*
    893 F.Supp.2d 1058 (D.Nev. 2012) .....................................................................4

*Kearney v. Salomon Smith Barney, Inc.*
    39 Cal.4th 95 (2006) .................................................................................................6

*Knutson v. Sirius XM Radio, Inc.*
    771 F.3d 559 (9th Cir. 2014) ..................................................................................7

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*
    845 F.3d 979 (9th Cir. 2017) ..................................................................................3

*Lucas v. Hertz Corp.*
    875 F.Supp.2d 991 (N.D. Cal. 2012) ................................................................. 4

*Meyer v. Benko*
    55 Cal.App.3d 937 (1976) ................................................................................ 7

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) .......................................................... 7, 8, 9, 10

*Olvera v. El Pollo Loco*
    173 Cal.App.4th 447 (2009) ............................................................................ 4

*Pollstar v. Gigmania, Ltd.*
    170 F.Supp.2d 974 (E.D. Cal. 2000) ......................................................... 11, 13

*Portland GE v. Liberty Mut. Ins. Co.*
    862 F.3d 981 (9th Cir. 2017) ............................................................................ 2

*Rodman v. Safeway Inc.*
    2015 WL 604985 (N.D. Cal. Feb. 12, 2015) .................................................... 8

*Selden v. Airbnb, Inc.*
    2016 WL 6476934 (D.D.C. Nov. 1, 2016) ....................................................... 8

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*
    925 F.2d 1136 (9th Cir. 1991) .......................................................................... 4

*Trans-Tec Asia v. M/V Harmony Container*
    518 F.3d 1120 (9th Cir. 2008) .......................................................................... 5

*Wash. Mut. Bank v. Super. Ct.*
    24 Cal.4th 906 (2001) ....................................................................................... 5

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
    25 Cal.App.3d 987 (1972) ............................................................................ 6, 7

*Wright v. Linebarger Googan Blair & Sampson, Ltd. Liab. P'ship*
    782 F.Supp.2d 593 (W.D. Tenn. 2011) ............................................................ 5

# I. INTRODUCTION

Defendant DoorDash, Inc. is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform. Customers can access the DoorDash platform via the DoorDash website or the DoorDash smartphone app. Plaintiffs Jennifer Peter and Karson Theiss (collectively, "Plaintiffs") used the DoorDash app to place food delivery orders. As part of that order process, they were given the opportunity to and in fact did pay "tips" for the delivery person who would be handling their order. These tips, however, were actually applied by DoorDash to assist in funding the guaranteed minimum payments it owes drivers. This action arises from DoorDash's scheme of using consumer tips towards the guaranteed minimum payments that DoorDash promised and owed its drivers.

DoorDash has filed a motion to compel arbitration, seeking to compel the individual arbitration of Plaintiffs' claims. Plaintiffs are not asserting that the arbitration provision that DoorDash seeks to enforce is unconscionable. Plaintiffs nonetheless submit that DoorDash's motion should be denied for the following two reasons.

First, this Court should determine whether the parties agreed to arbitrate. Here, Plaintiffs are challenging the very existence of an agreement to arbitrate. This is issue must be determined by the Court – not an arbitrator – regardless of whether there is a valid and enforceable delegation clause as part of the arbitration agreement, since that delegation clause may be given effect only where the contract has been formed in the first instance. *Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *3 (N.D. Cal. Aug. 23, 2019).

Second, DoorDash fails to establish that there is a valid agreement to arbitrate. Plaintiffs registered for DoorDash accounts using their smartphones. DoorDash contends that Plaintiffs are bound to its Terms and Conditions ("T&C"), including its arbitration provision, because a single screen, briefly displayed on their smartphones during the account registration process, included a sentence that reads "By tapping Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and

Conditions and Privacy Statement." DoorDash however, does not require that its users actual view the terms and conditions or even click the hyperlink provided. As set forth in the declarations of Plaintiff Peter and Plaintiff Theiss filed concurrently herewith, Plaintiffs did not have actual notice of the test Terms and Conditions or the arbitration provision contained therein. [Peter Decl. ¶¶ 2-7; Theiss Decl., ¶¶ 2-7.] As such, in order to establish the Plaintiffs are bound by the Terms and Conditions, DoorDash must show that it provided reasonable notice of its Terms and Conditions. This it cannot do. The text on which DoorDash relies is purposely inconspicuous, written in a dark grey font on a light gray background and sized smaller than anything else on found on the page. This is insufficient to have put Plaintiffs on inquiry notice.

Accordingly, the motion to compel arbitration should be denied.

## II. THIS COURT—AND NOT AN ARBITRATOR—DETERMINES QUESTIONS OF CONTRACT FORMATION

DoorDash contends that the arbitration agreement contains a delegation clause that provides that an arbitrator – rather than the Court – should determine arbitrability, including whether a valid agreement to arbitrate exists. [Motion, 10:7-12:3.] That is clearly not the law.

Judge Chen recently addressed this issue. In light of his thorough discussion, the following passage from his opinion is all that needs to be said:

> "Gateway" questions of arbitrability are typically for a court, and not the arbitrator, to decide, even where there is a facial agreement to arbitrate. *Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (stating that gateway questions of arbitrability "are presumptively reserved for the court"). Gateway questions include "'whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly

binding contract applies to a given controversy.'" *Id.* Notwithstanding the presumption of judicial determination, "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Id.* The issue of contract formation, however, is not a delegable gateway issue. The fundamental threshold question of whether there exists a binding contract (of which an arbitration clause is a part) cannot be delegated because it cannot be assumed that a delegation clause contained therein must be given effect.  In other words, if a contract contains a delegation clause, that delegation clause may be given effect only where the contract has been formed in the first instance. *King v. AxleHire, Inc.*, No. 18-cv-01621-JD, 2019 WL 1925493, at *2, 2019 U.S. Dist. LEXIS 72861, at *6 (N.D. Cal. Apr. 30, 2019) (stating that "[r]eliance on a delegation clause assumes a binding contract was formed, which simply elides the issue in dispute here"). The question of contract formation is for the court. As the Ninth Circuit said in *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979 (9th Cir. 2017), "[a]lthough challenges to the validity of a contract with an arbitration clause are to be decided by the arbitrator, challenges to the very existence of the contract are, in general, properly directed to the court." *Id.* at 983 (emphasis added); see also *Galilea, LLC v. AGCS Mar. Ins. Co.*, 879 F.3d 1052, 1056 (9th Cir. 2018) (stating the same).

*Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *3 (N.D. Cal. Aug. 23, 2019) (footnotes omitted).

Here, Plaintiffs submit that they did not agree to arbitrate their claims and that no valid agreement to arbitrate exists.  These are issues for the Court to determine – with or

– 3 –

without a valid delegation clause.

## III. PLAINTIFFS DID NOT AGREE TO ARBITRATE THEIR CLAIMS

### A. Arbitration May Be Compelled Only When a Valid Agreement to Arbitrate Exists.

"A party cannot be required to submit to arbitration any dispute which he has not agreed to so submit," *AT&T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); see also *In re Zappos.com, Inc. Customer Data Sec, Breach Litig.*, 893 F.Supp.2d 1058, 1062 (D. Nev. 2012) ("[A]rbitration is a matter of contract, and no party may be required to submit to arbitration any dispute which he has not agreed so to submit."). Because arbitration is a matter of contract between the parties, a judicial mandate to arbitrate must be predicated upon the parties' consent. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-1141 (9th Cir. 1991) (finding that, before a party can be ordered to arbitrate, there should be an "express, unequivocal agreement to that effect.") (citation omitted). A court should compel arbitration only when there are no disputed issues of material fact as to the existence of a binding agreement. *Id*. at 1140-1141. In making this threshold inquiry, there is no thumb on the scale in favor of finding an arbitration agreement to exist. The "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006); see also *Campos v. Campos Family Farms, LLC*, No. 12-598-LJO, 2012 WL 2090303, at *8 (E.D. Cal. June 8, 2012) ("the federal policy favoring arbitration is inapplicable to the determination of whether a valid agreement to arbitrate between the parties exists.").

As the party moving to compel arbitration, DoorDash bears the burden of proving by a preponderance of the evidence the existence of a valid arbitration agreement. *Lucas v. Hertz Corp.*, 875 F.Supp.2d 991, 998 (N.D. Cal. 2012) (citing *Olvera v. El Pollo Loco*, 173 Cal.App.4th 447, 453 (2009)); *Gonzalez v. Citigroup, Inc.*

– 4 –

2011 WL 4374997, at *2 (E.D. Cal. Sept. 19, 2011) (denying motion to compel arbitration because defendant did not meet its summary judgment level burden). DoorDash has not met that burden here.

### B.     No Valid Agreement to Arbitrate Was Formed.

Whether a valid agreement to arbitrate exists depends on state law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Although, the DoorDash T&C contains a Delaware choice of law provision, in its motion, DoorDash seeks to apply California law. [Tang Decl., Exhibit F (2018 T&C), at § 16(2) (providing the "Agreement is governed by the laws of the State of Delaware"); Tang Decl., Exhibit G (2019 T&C), at § 23(b) (same); DoorDash Motion, at 10:19-23 (citing California law).]  The Delaware choice-of-law provision in the DoorDash T&C is invalid and unenforceable because Plaintiffs never agreed to any term of the T&C. *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) (before relying on choice of law provision, court must "decide[], as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract."); *Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463, at *4 fn. 5 (N.D. Cal. Aug. 23, 2019).

"'Where [as here] the underlying basis for CAFA jurisdiction is diversity, the forum state's choice of law rules apply.'" *Eiess*, 2019 WL 3997463, at *4 (quoting *Wright v. Linebarger Googan Blair & Sampson, Ltd. Liab. P'ship*, 782 F.Supp.2d 593, 601 (W.D. Tenn. 2011). In the absence of a choice-of-law agreement, choice of law in California is determined under a governmental interest analysis. *Eiess*, at *5 (citing *Wash. Mut. Bank v. Super. Ct.*, 24 Cal.4th 906, 915 (2001)). The government interest analysis generally involves three steps: (i) first, a court determines whether the laws of the states at issue are the same or different; (ii) second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances to determine if there is a true conflict; and (iii) third, if there is a true conflict, the court evaluates and compares the nature and strength of the interest of each

jurisdiction and applies the law of the state whose interest would be more impaired if its law were not applied. *Eiess*, at *5 (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 107-108 (2006)).

Here, Plaintiff Peter is a citizen of Illinois and used DoorDash in Missouri [Dkt. #1 ("Complaint"), at ¶ 3]; Plaintiff Theiss is a citizen of Illinois and used DoorDash in Illinois [*Id.*, at ¶ 4]; and DoorDash is a citizen of Delaware (where it is incorporated) and California (where its principal place of business is located). [*Id.* at ¶ 5.]  Although the laws of California, Illinois and Missouri are potentially implicated, the substantive contractual laws of these three states are substantively similar with respect to the issue of contract formation.  Therefore, Plaintiffs will analyze contract formation under California law.

Under California law, mutual assent is required to form a contract and can be demonstrated either by words or by actions. *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850 (1999).  Because "the outward manifestation or expression of assent is the controlling factor," an offeree, "knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal.App.3d 987, 992-993 (1972).  However, and importantly, contracts cannot be formed through stealth. As the court in *Windsor Mills* made clear:

> [W]hen the offeree does not know that a proposal has been made to him this objective standard does not apply.  Hence, an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.

*Windsor Mills*, 25 Cal.App.3d at 992.

Thus, the Court must determine "whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement."

*Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Meyer v. Benko*, 55 Cal.App.3d 937, 942-943 (1976)).  Arbitration agreements are no exception; indeed, the "principle of knowing consent applies with particular force to provisions for arbitration." *Windsor Mills*, 25 Cal.App.3d at 992.

Plaintiffs are entitled to reasonable notice of the terms governing their transactions. *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 31 (2d Cir. 2002).  Indeed, for Plaintiffs to be bound by DoorDash's proposed arbitration provision, DoorDash must show that it gave Plaintiffs clear and reasonably conspicuous notice of the proposed contract terms and secured Plaintiffs' express and unambiguous consent. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014). "Clarity and conspicuousness of arbitration term are important in securing informed assent." *Specht*, 306 F.3d at 30. DoorDash cannot make this required showing.

Although the internet has changed the factual circumstances in which courts must apply contract formation principles, but the requirement of "'mutual manifestation of assent, whether by written or spoken word or by conduct, [remains] the touchstone of contract.'" *Nguyen,* 763 F.3d at 1175 (quoting *Specht*, 306 F.3d at 29).  Like any other agreement, the touchstone of any agreement formed online is a mutual manifestation of assent, which may be conveyed verbally, in writing or by conduct. *Nguyen,* 763 F.3d at 1175.  Traditionally, courts have sorted contracts formed online (whether through a webpage or a smartphone app) into one of two categories: "[1] 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and [2] 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id.* at 1175-76.  Recently, courts have begun assigning internet contracts to a third category called a "sign-in wrap" agreement. *Colgate v. JUUL Labs, Inc.*, 402 F.Supp.3d 728, 763 (N.D. Cal. 2019). "'Sign-in-wrap' agreements are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is

1  required before the user can access the service." *Id.* (citing *Selden v. Airbnb, Inc.*, No. 16-
2  cv-00933, 2016 WL 6476934, at *4 (D.D.C. Nov. 1, 2016).

3        While clickwrap agreements involve presenting the user with a list of terms and a
4  button to manifest assent, browsewrap agreements do not directly present the user with
5  the text of the agreement. Instead, the user is presented with a hyperlink to a webpage
6  containing the text of the agreement; the user can click that link to review text of the
7  agreement *but is not required to do so*. Thus, "[t]he defining feature of browsewrap
8  agreements is that the user can continue to use the website or its service ***without visiting***
9  ***the page*** hosting the browsewrap agreement or even knowing the webpage exists." *Be In,*
10 *Inc. v. Google Inc.*, Case No. 5:12-cv-3373 LHK, 2013 WL 5568706, at *23 (N.D. Cal.
11 Oct. 9, 2013) (emphasis added). In other words – and in direct contrast to clickwrap
12 agreements – with browsewrap agreements it is quite likely that the user never even saw
13 the text of the agreement. As such, "Courts are typically reluctant to apply browsewrap
14 agreements against consumers who were not provided with sufficient notice that their use
15 of a website [or a smartphone application] would be construed as a manifestation of
16 assent to the agreement's terms." *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015
17 WL 604985, at *10 (N.D. Cal. Feb. 12, 2015) (citing *Nguyen*, 763 F.3d at 1177, 1178 n.
18 2). As a result, "[m]ost courts upholding the enforceability of browsewrap agreements
19 have done so in circumstances where notice to the [consumer] was firmly established in
20 the factual record." *Be In, Inc.*, 2013 WL 5568706, at *7; see also *Nguyen*, 763 F.3d at
21 1176; *Specht*, 306 F.3d at 31-32, 35 ("Reasonably conspicuous notice of the existence of
22 contract terms and unambiguous manifestation of assent to those terms by consumers are
23 essential if electronic bargaining is to have integrity and credibility."); *Berkson v. Gogo*
24 *LLC*, Case 1:14-cv-01199-JBW-LB, 2015 WL 1600755 (April 9, 2015) ("For an internet
25 browsewrap contract to be binding, consumers must have reasonable notice of a
26 company's 'terms of use' and exhibit 'unambiguous assent' to those terms.").

27       Here, Plaintiffs were not directly presented the text of DoorDash's Terms and
28 Conditions; were not required to scroll through the Terms and Conditions; and were not

to indicate that they reviewed or that they "agree with" or "accept" the Terms and Conditions. Instead, according to DoorDash, as part of singing-up for a DoorDash account, Plaintiffs were presented with a screen on the DoorDash app where Plaintiffs provided the usual information required when signing-up for a service (first and last name, email, telephone and a password) and clicked "Sign Up." According to DoorDash, when Plaintiffs clicked the "Sign Up" button, in addition to sending the personal information they had provided on the page to DoorDash and signing-up for an account, Plaintiffs also agreed to DoorDash's Terms and Conditions. DoorDash arrives at this conclusion by relying on the following text (which included a hyperlink to a webpage containing the Terms and Conditions) located below the large red "Sign Up" button: "By tapping Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement."

While clearly not a clickwrap agreement (since Plaintiffs were not required to click "I agree" after being presented with the Terms and Conditions), the fact that Plaintiffs were required to click the "Sign Up" button distinguishes this from the what is the traditional browsewrap agreement (where the users take no affirmative act other than to use the website or product). As such, the situation present here would likely be best described as a sign-in wrap agreement.

In cases such as this one, where the arbitration provision is set forth in webpage or smartphone page accessible via a hyperlink, the determination of whether mutual assent exists rests on whether reasonable notice has been provided. *Nguyen*, 763 F.3d at 1173 ("We agree with the district court that Barnes & Noble did not provide reasonable notice of its Terms of Use, and that Nguyen therefore did not unambiguously manifest assent to the arbitration provision contained therein."). As the court recently explained in *Colgate*, the issue when evaluating a sign-in wrap agreement is the same as when evaluating browsewrap agreement: the agreements are "valid where the existence of the terms was reasonably communicated to the user." *Colgate*, 402 F.Supp.3d at 764 (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

### 1. *Plaintiffs Lacked Actual Knowledge of the Arbitration Provision.*

Here, Plaintiffs did not see any reference to the "Terms and Conditions" and only became aware of these Terms and Conditions in connection with this lawsuit. [Peter Decl., ¶¶ 4-7; Theiss Decl., ¶¶ 4-7.] Accordingly, Plaintiffs lacked actual knowledge of the T&C as well as the arbitration provision contained therein.

### 2. *DoorDash Did Not Provide Inquiry Notice of Its Arbitration Provision.*

Where, as here, there is no evidence that the Plaintiffs had actual knowledge of the T&C, the validity of the browsewrap agreement turns on whether the DoorDash app puts a reasonably prudent user on inquiry notice of the terms of the contract. *Nguyen*, 763 F.3d at 1177 (citing *Specht*, 306 F.3d at 30). Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the webpage or smartphone application. *Id.* (citing *Be In, Inc.,* 2013 WL 5568706, at *1).

The recent trend in both federal district and appellate courts for browsewrap and sign-in wrap agreements is to require both (i) conspicuous hyperlinks or texts of agreements and (ii) an explicit text referencing terms of agreements or instructing users that they are assenting to agreements. The additional requirement of an explicit reference is to protect users who may "have no reason to suspect [that] they will be bound" by the terms hidden in hyperlink agreements. *Nguyen*, 763 F.3d at 1179. Thus, in *Nguyen*, the Ninth Circuit invalidated an agreement where the "Terms of Use" hyperlink was placed directly below or a few inches away from the button which required users to click to proceed in a checkout process, because the website did not provide any notice to users or promote them to take any affirmative action to demonstrate their assent to the agreement. 763 F.3d at 1179.

Where the website contains an explicit textual notice on every page that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to enforcing browsewrap agreements. See, *Cairo, Inc. v. Crossmedia Servs.*, Inc., No. 04-04825, 2005 WL 756610, at *2, *4-5 (N.D. Cal. Apr. 1, 2005) (enforcing

forum selection clause in website's terms of use where every page on the website had a textual notice that read: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site, which prohibit commercial use of any information on this site"). However, and importantly, even where the text is explicit, courts will not enforce a browsewrap agreement where the design makes the notice difficult or impossible to read. See *Pollstar v. Gigmania, Ltd.*, 170 F.Supp.2d 974, 981 (E.D. Cal. 2000) (refusing to enforce browsewrap agreement where the text "use is subject to license agreement" was provided in small gray print on a gray background).

In short, the conspicuousness and placement of the "Terms and Conditions" hyperlink, other notices given to users of the terms of use, and the website's – or, as here, the smartphone application's – general design all contribute to whether a reasonably prudent user would have inquiry notice of a browsewrap agreement. DoorDash contends that Plaintiffs had inquiry notice of the arbitration provision because a link to the Terms and Conditions is found on at the bottom of the registration screen. DoorDash is wrong, however. The notice is not sufficiently conspicuous to place a prudent consumer on inquiry notice for numerous reasons.

First, DoorDash's "textual notice" (i.e., that portion of the notice which reads "By tapping Sign up, Continue with Facebook, or Continue with Google, you agree to our[…]" is displayed as a gray font on a lighter-shade of gray background. This naturally decreases readability. Even where text is explicit, courts will not enforce a browsewrap agreement where the design makes the notice difficult or impossible to read. *Pollstar*, 170 F.Supp.2d at 981.

Second, DoorDash's notice uses an unreasonably small font. The screenshot of the sign-up page attached as Exhibit E to the declaration Stanley Tang is *much* larger than what would ever appear on a cell phone – measuring 7.625 inches high by 3.5 inches wide on the page. In comparison, the screen on an iPhone X measures approximately 5.65 inches high by 2.79 inches wide. Reproduced below is the DoorDash sign-up sized to the approximate dimensions of an iPhone X:



[Torrijos Decl., ¶ 3.]

In *Conservatorship of Link*, 158 Cal.App.3d 138 (1984) a member of a car racing pit crew was injured while watching a car race from a nonpublic viewing area. To get into that area, Link had to sign a release of liability, which was in 5.5-point type. The court held that the release was unenforceable "because it is printed in five-and-one-half-point type and cannot be easily read by persons of ordinary vision." *Link*, 158 Cal.App.3d at 139. Concerning the font, the court stated that "Typeface smaller than eight-point is an unsatisfactory reading medium." *Id*. at 141 (internal citations omitted). The court also noted: "Numerous provisions of the Civil Code regulate the typeface size of required contract provisions, generally requiring 8- to 10-point type, often in boldface, with headings required in up to 16-point boldface capital letters. As a matter of public policy,

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION (CASE NO. 4:19-CV-06098-JST)**

the typeface size of the crucial language in a release should be no smaller." *Id*. at 141-142 (fn. omitted). DoorDash's notice suffers from the same flaw as it clearly is displayed in "[t]ypeface smaller than eight-point." *Id*. at 141; see also *Pollstar*, 170 F. Supp. 2d at 981.

Third, consumers cannot realistically review the T&C on their smartphones. Even if consumers attempted to review the T&C (which Plaintiffs did not do here), they would find that it is impractical, if not impossible, to review the T&C on their smartphones because the April 3, 2018 T&C consists of 7,244 words and the August 22, 2019 T&C consists of 8,600 words. On an iPhone X, the April 3, 2018 T&C takes up 23 full screen pages. [Torrijos Decl., ¶¶ 4-6.]

For each of the above reasons, DoorDash failed to provide sufficient inquiry notice of its arbitration provision to Plaintiffs.

## IV.   CONCLUSION

For each of the foregoing reasons, Plaintiffs respectfully request that the Court deny in full Defendant's motion to compel arbitration.

Dated:  December 13, 2019   ARIAS, SANGUINETTI, WANG & TORRIJOS, LLP

By: ___*/s/ Alfredo Torrijos*___
    Mike Arias
    Alfredo Torrijos

LAW OFFICE OF RICHARD S. CORNFELD, LLC
    Richard S. Cornfeld (Admitted *Pro Hac Vice*)
    Daniel Scott Levy (Admitted *Pro Hac Vice*)

*Counsel for Plaintiffs and the Proposed Class*